**Randall Herbert WEBNER, Plaintiff,**

v.

**TITAN DISTRIBUTION, INC., Defendant.**

**No. C97–3101.**

United States District Court,
N.D. Iowa,
Central Division.

June 26, 2000.

MEMORANDUM OPINION AND OR-
DER REGARDING DEFEN-
DANT'S MOTION FOR JUDG-
MENT AS A MATTER OF LAW,
OR, IN THE ALTERNATIVE, A
NEW TRIAL, AND PLAINTIFF'S
REQUEST FOR FEES, EX-
PENSES AND FRONT PAY

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ............................. 1218

II. LEGAL ANALYSIS ........................................... 1219
 A. Motion For Judgment As A Matter Of Law ....................... 1219
 1. Applicable standards ......................................... 1219
 2. Sufficiency of the evidence—disability discrimination .......... 1220
 a. Actual disability ........................................ 1220
 b. Perceived disability ..................................... 1222
 c. Record of disability ..................................... 1223
 3. Sufficiency of evidence—Webner's qualification ................. 1223
 4. Sufficiency of evidence—emotional distress damages ............ 1224
 a. Emotional distress damages for the disability claim ......... 1224
 b. Emotional distress damages for state law retaliation claim ... 1226
 5. Sufficiency of evidence—punitive damages ..................... 1227
 a. Punitive damages—federal disability claim ................. 1227
 b. Punitive damages—state retaliation claim ................. 1229
 6. Sufficiency of evidence—retaliation claim ..................... 1229
 B. Motion For New Trial......................................... 1230
 C. Plaintiff's Request For Fees and Expenses ...................... 1231
 1. Fees claimed................................................ 1231
 a. Reasonable hourly rate ................................... 1231
 b. Hours reasonably expended ............................... 1232
 2. Expenses claimed ........................................... 1233
 D. Plaintiff's Request For Prospective Equitable Relief................. 1233
 1. Reinstatement ............................................. 1234
 2. Front pay ................................................. 1236

III. CONCLUSION .............................................. 1239

Following an exceptionally well tried employment discrimination jury trial, the court is called upon to resolve the pending post-trial motions filed by each party. Specifically, the court resolves the defendant's motions for judgment as a matter of law and new trial, as well as the plaintiff's request for fees and expenses, and front pay.

## I. INTRODUCTION AND BACKGROUND

Plaintiff Randy Webner ("Webner") claimed that he was discriminated against by defendant Titan Distribution, Inc. ("Titan") because he had a disability, a record of a disability, or a perceived disability in violation of the federal Americans with Disabilities Act (ADA) of 1990, and that Titan retaliated against him for pursuing a workers' compensation claim by terminating him or laying him off. This case was tried before a jury beginning February 14, 2000, in Sioux City, Iowa. On February 17, 2000, the jury returned a verdict in favor of Webner, finding that Webner had been terminated by Titan as a result of his disability, a perceived disability, and a rec-

ord of disability. The jury also found that Webner had been terminated by Titan in retaliation for pursuing a workers' compensation claim. The jury awarded Webner $13,771.00 for lost wages, $12,500.00 for emotional distress damages on the disability claim, and $12,500.00 for emotional distress damages on the retaliation claim. The jury also returned a verdict of $100,000.00 in punitive damages on each of the two claims. On February 18, 2000, the Clerk of Court entered judgment.

On March 6, 2000, Titan filed a Motion for Judgment as a Matter of Law or, In the Alternative, a New Trial, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure. Titan bases its motion for judgment as a matter of law on the following grounds: (1) that there was insufficient evidence for the jury to find disability discrimination; (2) that Webner is not entitled to emotional distress damages as a matter of law; (3) that Webner is not entitled to recover punitive damages; and (4) that there was insufficient evidence for the court to submit the retaliation claim to the jury. Thus, Titan seeks to

have the court set aside that judgment in its entirety or, in the alternative, set aside certain aspects of the judgment. Lastly, and in the further alternative, Titan seeks a new trial in this case. Webner resisted these motions, and also filed an application for attorneys' fees and expenses, and a request for front pay. Titan resisted both of these motions.

The court heard oral arguments on these post-trial motions on May 4, 2000. Webner was represented by Mark D. Sherinian and J. Vance Jorgensen. Titan was represented by Gene R. LaSuer and Sharon K. Malheiro of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, Iowa. With this procedural background in mind, the court turns to its consideration of the pending motions.

## II. LEGAL ANALYSIS

### A. Motion For Judgment As A Matter Of Law

#### 1. Applicable standards

The standards for a motion for judgment as a matter of law are outlined in Rule 50 of the Federal Rules of Civil Procedure. In pertinent part, Rule 50 provides:

(a) **Judgment as a Matter of Law.**

(1) If during the trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before the submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) **Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.** If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law; or

(2) if no verdict was returned;

(A) order a new trial, or

(B) direct entry of judgment as a matter of law.

FED R. CIV. P. 50(a)-(b).

The Eighth Circuit Court of Appeals reiterated the standards to be applied by the district court—as well as the appellate court—in determining a motion for judgment as a matter of law:

When the motion seeks judgment on the ground of insufficiency of the evidence, the question is a legal one. *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir.1997); *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321, 324 (8th Cir.1997). A jury verdict must be affirmed " 'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party.' " *Stockmen's Livestock Mkt., Inc. [v. Norwest Bank of Sioux City]*, 135 F.3d 1236, 1240–41 (8th Cir.1998) (quoting *Chicago Title Ins. Co. v. Resolution Trust Corp.*, 53 F.3d 899, 904 (8th Cir.1995)).

*Cross v. Cleaver,* 142 F.3d 1059, 1066 (8th Cir.1998); *accord Reeves v. Sanderson Plumbing Products, Inc.,* —— U.S. ——, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (stating that under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.") (citations omitted). Thus, this standard requires the court to:

> "[C]onsider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence."

*Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.,* 928 F.2d 299, 301 (8th Cir.1991) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 989 (8th Cir.1989)); *see also Stephens v. Johnson,* 83 F.3d 198, 200 (8th Cir.1996) (citing *Whitnack v. Douglas County,* 16 F.3d 954, 956 (8th Cir.1994), in turn, quoting *Hastings v. Boston Mut. Life Ins. Co.,* 975 F.2d 506, 509 (8th Cir.1992)); *Haynes v. Bee–Line Trucking Co.,* 80 F.3d 1235, 1238 (8th Cir.1996); *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir. 1994) (reiterating these factors, citing *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992)); *McAnally v. Gildersleeve,* 16 F.3d 1493, 1500 (8th Cir.1994) (same).

This standard for consideration of a motion for judgment as a matter of law accords the jury's verdict substantial deference. *Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806 (8th Cir.1994), *cert. denied,* 514 U.S. 1004, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *McAnally,* 16 F.3d at 1500. However, even with this deference to the jury's verdict, the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the undisputed facts,'" *McAnally,* 16 F.3d at 1500 (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 651 (8th Cir.1989), in turn, quoting *Marcoux v. Van Wyk,* 572 F.2d 651, 653 (8th Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)), but the court must still defer to the jury's resolution of conflicting testimony. *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Having reviewed the applicable standards, the court turns to an examination of the claims raised in Titan's motion for judgment as a matter of law to determine whether post-trial relief from the jury's verdict against Titan is appropriate.

### 2. Sufficiency of the evidence—disability discrimination

Titan argues that Webner failed to establish a *prima facie* case under the ADA. Specifically, Titan argues that Webner failed to prove that he was disabled within the meaning of the ADA, and that he was qualified to perform the essential functions of the job (either with or without accommodation).

### a. Actual disability

Titan argues that Webner failed to establish that he had a present physical or mental impairment that substantially limits one or more of his major life activities. The major life activities to which Titan devotes its argument are lifting and working. The court, therefore, must determine whether Webner presented sufficient evidence such that a reasonable jury could find that Webner has a present physical or mental impairment that substantially limits one or more of his major life activities. 42 § 12102(2)(A); *see Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2146, 144 L.Ed.2d 450 (1999) (requiring that a person be presently—not potentially or hypothetically—substantially limited in order to demonstrate a disability).

In seeking definition of the term "substantially limits" under the ADA, the Eighth Circuit Court of Appeals looks to the regulations implementing the ADA:

[T]he EEOC regulations state that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment, (ii) its duration or expected duration, and (iii) its actual or expected long-term impact. 29 C.F.R. § 1630.2(j)(2).

*Aucutt,* 85 F.3d at 1319; *accord Cook v. State of R.I. Dep't of Mental Health, Retardation, & Hosps.,* 10 F.3d 17, 25 n. 10 (1st Cir.1993) (finding that EEOC regulations "indicate that the question of whether an impairment is substantially limiting turns on '(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the [actual or expected] permanent or long-term impact . . . of, or resulting from, the impairment,'" quoting 29 C.F.R. § 1630, App. at 403 (1992)). ADA regulations, as well as ADA interpretive guidance, make clear that temporary, minor injuries do not "substantially limit" a person's major life activities. 29 C.F.R. § 1630.2(j), 29 C.F.R. pt. 1630, App. § 1630.2(j). Also, the Supreme Court has recently held that the determination of whether an individual is substantially limited in a major life activity must take into account mitigating measures such as medicines and assistive devices. *Sutton,* 119 S.Ct. at 2147.

This court has applied the above "substantially limits" a "major life activity" requirement in a number of cases under the ADA. *See e.g., Wheaton v. Ogden Newspapers, Inc.,* 66 F.Supp.2d 1053, 1061–65 (N.D.Iowa 1999) (considering whether the plaintiff's back condition substantially limits any of major life activities such that the plaintiff was disabled within the meaning of the ADA); *Sicard v. City of Sioux City,* 950 F.Supp. 1420, 1428 (N.D.Iowa 1996) (considering whether the plaintiff's uncorrected myopia substantially limited any major life activities such that the plaintiff was disabled within the meaning of the

ADA); *Muller v. Hotsy Corp.,* 917 F.Supp. 1389, 1411–12 (considering whether a person with temporary spinal injury was nonetheless perceived by his employer as having a disability that substantially limited his major life activity of working); *Hutchinson v. United Parcel Serv., Inc.,* 883 F.Supp. 379, 395–96 (considering whether a person with shoulder and back injuries was substantially limited in any major life activity); *Fink v. Kitzman,* 881 F.Supp. 1347, 1376–77 (considering whether a person with carpal tunnel syndrome was substantially limited in a major life activity).

■ Here, the court concludes that there was more than sufficient evidence presented at trial from which a reasonable jury could conclude that Webner was actually disabled, within the meaning of the ADA, with respect to the major life activities of standing, bending, and twisting. The evidence in the record established that Webner had a history of back ailments. It was undisputed that, beginning in 1995 Webner suffered two serious back injuries (herniated disks) which lead to three different surgeries, and ultimately a disability rating by his treating physician, Dr. Nelson, of 18 percent of the body as a whole. Webner testified that because of his back condition, he had difficulty lifting heavy objects, standing for extended periods of time, rotating at waist level, and bending from the waist more than half way. Webner's testimony is supported by the restrictions imposed upon him by his doctors upon returning to work. For example, on March 7, 1997, just a few weeks before Webner's employment with Titan ended, Dr. Nelson provided for an incremental return to work status, physical therapy two times per week for two weeks, no repetitious bending/twisting, and the following lifting restrictions: occasional lifting of fifty pounds, frequent lifting of twenty-thirty pounds, and continuous lifting of ten to fifteen pounds.

In addition, the court also finds that a reasonable jury could have concluded that

Webner's back condition substantially limited his ability to perform the major life activity of working. A person is substantially limited in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *See* 29 C.F.R. § 1630.2(j)(3)(i); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 617 (8th Cir.1997); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996). Here, there was undisputed testimony from Clark Williams, an expert in vocational rehabilitation, that because of Webner's back impairment, Webner was precluded from performing work in the heavy and very heavy industrial classifications. In fact, Mr. Joiner, Webner's supervisor, testified that the only type of work Titan afforded Webner was light duty work. Based on Mr. Williams's testimony, coupled with Webner's bending and twisting restrictions, his inability to stand for extended periods of time and his lifting restrictions, the court finds that there was evidence in the record for the jury to conclude that Webner was precluded from performing a class or broad range of jobs as compared to average persons in the general population having comparable training skills and abilities.

While the court agrees with Titan that Webner's lifting restrictions, without additional evidence, do not demonstrate that Webner was substantially limited in the major life activity of lifting, the court previously concluded that a reasonable jury could find that Webner is substantially limited in his ability to perform the major life activities of standing, bending, twisting, and working. Therefore, viewing the evidence in the light most favorable to Webner, as it must in considering the pending motion for judgment as a matter of law, *see Cross,* 142 F.3d at 1066, the court concludes that sufficient evidence was presented at trial to support the jury's finding of actual disability. Therefore, Titan's request for judgment as a matter of law on this claim must be denied.

### b. Perceived disability

Titan also argues that, because the jury verdict finding that it discriminated against Webner due to a perceived disability is not supported by the facts or the law, the court should enter judgment as a matter of law for Titan on the perceived disability claim. Titan argues that it was Webner's self-proclaimed inability to do the job that lead to Titan's reasonable job decision to lay Webner off.

The ADA provides protection to those individuals who are "regarded as having a disability." 42 U.S.C. § 12102(2)(C). Being "regarded as having a disability" can be demonstrated in any one of three ways: (1) the individual may have some impairment that does not substantially limit him or her in a major life activity, but is perceived by an employer as having a substantially limiting impairment; (2) the individual may have an impairment which, only because of adverse attitudes about the impairment, appears substantially limiting; or (3) the individual may be free from impairments, but regarded by the employer as having a substantially limiting impairment. 29 C.F.R. pt. 1630, App. § 1630.2(1). Thus, whether a reasonable jury could find that Webner was perceived as being disabled within the meaning of the ADA is contingent upon whether there was evidence in the record establishing that Titan regarded or perceived Webner as having a disabling impairment.

■ The court finds that there was evidence in the record such that a reasonable jury could conclude that Titan regarded or perceived Webner's back condition and work restrictions as substantially limiting one or more of his major life activities. It is undisputed that Titan knew that Webner had back problems. Titan provided Webner with a stool so that he would not have to stand all day. Titan also adjusted the heights of various pallets at Webner's workstation so that he would not have to reach for the parts. Both Mr. Gibbons and Mr. Borell testified that even though Webner was given the most light duty job

available in the facility, they believed that he was still unable to perform the essential functions of that job. Also, Titan admitted that when it terminated Webner it based its decision in part on the belief that Webner might re-injure himself. Webner further testified that when he was terminated Mr. Gibbons explained that it was due to his disability. Viewing the evidence in the light most favorable to Webner, as it must in considering the pending motion for judgment as a matter of law, *see Cross,* 142 F.3d at 1066, the court concludes that sufficient evidence was presented at trial to support the jury's finding of perceived disability. Therefore, Titan's request for judgment as a matter of law on this claim must also be denied.

### c. Record of disability

Titan also argues that, because there was absolutely no evidence produced by Webner to show that he had a history of, or had been mis-classified as, having a physical impairment, the court must enter judgment in favor of it on this claim.

■ Having a record of disability means that one "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see Land v. Baptist Medical Center,* 164 F.3d 423, 425 (8th Cir.1999); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 192 (5th Cir.1996); *Roth v. Lutheran General Hosp.,* 57 F.3d 1446, 1456 (7th Cir.1995); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727–28 (5th Cir. 1995); *Ricks v. Xerox Corp.,* 877 F.Supp. 1468, 1476 (D.Kan.1995). This provision is intended to address discrimination that occurs because of an individual's history of a disability or because of an individual's misclassification as disabled. *See Roth,* 57 F.3d at 1456. Based on the evidence adduced at trial, the court is convinced that a reasonable jury could have concluded that Webner had a record of a disability.

Webner testified that he suffered his first back injury in 1995, and thereafter suffered another back injury. Webner underwent three surgeries for these back injuries. He had been off work for over a year and a half. Additionally, both Mr. Gibbons and Mr. Joiner testified that they were concerned about Webner's ability to do the assembly job even before he returned to work in January of 1997. The court finds that a reasonable jury could have concluded that the concerns of Mr. Gibbons and Mr. Joiner were based on Webner's history of back injuries. Also, Titan was at all times fully cognizant of Webner's back injuries, providing him with accommodations, such as a stool and adjusting the height of materials so that Webner would not have to bend. Webner was not permitted to resume working for Titan until he obtained documentation from Titan's doctor allowing for his return. Viewing the evidence in the light most favorable to Webner, as the court must in considering the pending motion for judgment as a matter of law, *see Cross,* 142 F.3d at 1066, the court concludes that sufficient evidence was presented at trial to support the jury's finding of a record of a disability. Therefore, Titan's request for judgment as a matter of law on this claim must also be denied.

### 3. Sufficiency of evidence—Webner's qualification

Titan argues that even if the court concludes that the jury could have found that Webner was disabled, there is insufficient evidence for a reasonable jury to conclude that Webner is a qualified individual with a disability.

Under the ADA, a qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *See* 42 U.S.C. § 12111(8); *Fjellestad v, Pizza Hut of America, Inc.,* 188 F.3d 944, 1999 WL 642958 (8th Cir.1999); *Benson v. Northwest Airlines,* 62 F.3d 1108, 1111–12 (8th Cir.1995). The Eighth Circuit Court of Appeals has formulated a two prong test of

whether a person is "qualified" within the meaning of the ADA:

> (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation.

42 U.S.C. § 12111(8); *see also Benson,* 62 F.3d at 1111–12.

■ The court concludes that based upon the evidence presented at trial, a reasonable jury could have found that Webner was a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of his job. First, although there was testimony that Webner had yet to achieve Titan's expected productivity goal of 75%, he was continuing to improve. In fact, there was testimony that during his last week of work, Webner was making between 73% to 93% of Titan's production goal. Second, at the meeting when Titan terminated Webner's employment, Mr. Joiner testified that he believed that Webner had been doing what was expected of him. Third, although Webner testified that he experienced pain, he was still able to do his work, and he never conveyed to Titan that he was unable to perform his job. Although Titan argues otherwise, the jury clearly credited Webner's testimony. Therefore, because reasonable minds could differ as to the conclusions that could be drawn from the evidence, and because the court is required to defer to the jury's resolution of conflicting testimony, *see Jackson,* 443 U.S. at 326, 99 S.Ct. 2781, the court will not act as a super-juror and second guess the jury's credibility determinations. Fourth, there is conflicting testimony as to whether Webner's job required him to rotate and perform all the various jobs on the assembly line. Titan argues that such rotation was required, however, Webner's supervisor, Mr. Joiner, testified that rotating throughout the plant assembly line was not required. As stated above, because the court is required to defer to the jury's determination of con-

flicting testimony, Titan's request for judgment as a matter of law on this claim must also be denied. *See also Reeves,* —— U.S. —— at ——, 120 S.Ct. 2097, 2110 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citation omitted).

### 4. Sufficiency of evidence—emotional distress damages

Titan also argues that it is entitled to judgment as a matter of law on the emotional distress damages awarded to Webner for his disability claim and retaliation claim. Titan argues that Webner has failed to establish sufficient evidence for a reasonable jury to conclude that there were emotional distress damages under either federal or Iowa law.

### a. Emotional distress damages for the disability claim

On this claim, Titan argues that the only evidence that Webner submitted to prove emotional distress was his own statements about how he felt immediately after the termination. Titan points out that Webner does not deny that there was no physical injury and that he had any medical treatment for any psychological or emotional injury. Titan also argues that Webner offered no testimony explaining why the award of damages for lost wages was insufficient to make him whole. The court disagrees with Titan's argument that there is insufficient evidence to support the award of emotional distress damages for the disability claim.

■ The Eighth Circuit Court of Appeals has held that any award for emotional distress must be supported by competent evidence of a "genuine injury." *Forshee v. Waterloo Indus.,* 178 F.3d 527, 531 (8th Cir.1999) (citing *Carey v. Piphus,* 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). Emotional distress damages include mental suffering or emotional anguish. Although essentially sub-

jective, genuine injury in this respect may be evidenced by one's conduct and observed by others. Juries must be guided by appropriate instructions, and an award of damages must be supported by competent evidence concerning the injury. *Carey*, 435 U.S. at 264 n. 20, 98 S.Ct. 1042 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). While a compensatory damage award may be based solely on plaintiff's own testimony, such testimony should identify and describe the kind of severe emotional distress that would warrant such an award of emotional distress damages. *Forshee*, 178 F.3d at 531 (citing *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 357–58 (8th Cir.1997)). Also, it is well settled that awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms. *See, e.g., Jenkins v. McLean Hotels, Inc.*, 859 F.2d 598, 600 (8th Cir.1988); *Morrissey v. Welsh Co.*, 821 F.2d 1294, 1299 n. 3 (8th Cir. 1987); *Stafford v. Neurological Medicine, Inc.*, 811 F.2d 470, 475 (8th Cir.1987); *Vanskike v. Union Pac. R R.*, 725 F.2d 1146, 1150 (8th Cir.1984).

The only evidence that Webner presented at trial regarding his emotional distress was his testimony. Webner's testimony on this point consisted of the following: He drove home real slow after his termination; he felt like there was a big hole in his chest; he felt like he lost his best friend; he was scared because he did not know how he was going to pay for his bills; he wrote down everything that happened to him on that day; he was frustrated about having to find work; he never wanted to go through something like that (the termination) again; and he felt empty.

Titan points out that when confronted with similar facts, the Eighth Circuit Court of Appeals in *Forshee*, determined that there was insufficient evidence to submit a claim of emotional distress to the jury. In *Forshee*, like the present case, plaintiff's evidence of emotional distress, suffered because of her supervisor's sexual advance, was based entirely upon her own testimony. She testified that after being terminated "she went home and sat and cried about the rest of the day," and that she was forced to take a job at lower pay and work two jobs. *Forshee*, 178 F.3d at 531. In reversing the award of emotional distress damages, the *Forshee* court reasoned:

> Forshee suffered no physical injury, she was not medically treated for any psychological or emotional injury, and no other witnesses corroborated any outward manifestation of emotional distress. After the termination, rather than returning to an employment agency, Forshee found a new job on her own almost immediately and while her income declined, there was no testimony explaining why the award of damages for lost wages is not sufficient to make her whole.

*Forshee*, 178 F.3d at 531. The *Forshee* court emphasized that the plaintiff admitted that the sexual advance was not the source of her post-termination distress, and thus the *Forshee* court reasoned that plaintiff's distress emanated from the loss of her job, not from her employer's sexual advance. *Id.*

The court recognizes that Webner, like the plaintiff in *Forshee*, suffered no physical injury, was not medically treated for any psychological or emotional injury, and no other witnesses corroborated any outward manifestation of Webner's emotional distress. However, unlike the plaintiff in *Forshee*, Webner never admitted that the disability discrimination was not the sole source of his post-termination distress. In fact, Webner testified that Mr. Joiner and Mr. Gibbons expressly stated that he was being terminated because of his disability. Moreover, Webner was out of work for a period of six months, whereas the plaintiff in *Forshee* was out of work for only a short period of time. Webner testified that he was out of work for this period of time because potential employers refused to

hire him because of his back condition, thereby subjecting him to further discrimination based on his disability. Additionally, Webner testified that he was scared because he did not know where his next pay check was going to come from and how he was going to pay his bills. The court concludes that based upon this evidence, a reasonable jury could have concluded that an award of damages for lost wages would be insufficient to make Webner whole.

■ Therefore, the court concludes that a reasonable jury could have made a reasoned judgment based on the evidence that Webner suffered a genuine injury. The jury observed and listened to Webner as he testified, and ultimately credited his testimony. The jury was instructed to consider the nature, character, seriousness of the emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life that Webner felt. Consequently, the court will not second guess the jury's reasoned assessment and judgment of Webner's intangible harm. See *Jenkins*, 859 F.2d 598, 600 (8th Cir.1988) (stating that awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms). Moreover, a jury of peers represents a cross section of the citizens of the Northern District of Iowa and a reflection of its diversity. This civil jury with their varied life experiences, including many with knowledge about factory work and related blue collar employment, embody a collective knowledge and wisdom about the effect of losing a job that is far superior to the vast majority of life tenured Article III trial judges (and I might add appellate judges) who presumably have less life experience, knowledge, or personal concern about losing one's job—especially a factory job. Particularly because the question of whether Webner suffered compensable emotional distress is a close question under these facts, the jury, rather than the judge, is in a far superior position to evaluate that evidence,

limited as it was, and make a determination on this issue—a subject they were fully instructed on. Under these facts, the jury was free to find no emotional distress damages, and surely could have done so under the instructions if their collective judgment so warranted. Setting aside the jury's judgment that Webner is entitled to modest emotional distress damages, would in my view, seriously undermine the jury's fact finding function, and deprive Webner of the historic role that juries play in determining close factual issues, thus emasculating Webner's statutory right to trial by jury. Therefore, the court finds that there was sufficient evidence presented such that a reasonable jury could have awarded Webner damages in the amount of $12,500.00 for the emotional distress he suffered on his federal disability claim.

#### b. Emotional distress damages for state law retaliation claim

Titan also argues that because there was insufficient evidence to present claims of emotional distress to the jury, the court should strike that portion of the judgment. Titan contends that under federal or state law, Webner still must present evidence of a genuine injury.

■ In *Niblo v. Parr Mfg.*, 445 N.W.2d 351 (Iowa 1989), the court stated that emotional distress damages can be obtained in retaliation cases provided there is some evidence to support the claim. *Id.* at 352. Also, a plaintiff need not prove that the emotional distress was severe when the tort is retaliatory discharge in violation of public policy. *Niblo v. Parr Mfg.*, 445 N.W.2d 351, 357 (Iowa 1989). In the preceding section—emotional distress claim for disability discrimination—the court concluded that, based on Webner's testimony, a reasonable jury could have found that Webner suffered a genuine emotional injury. Therefore, because there was sufficient evidence in the record for a reasonable jury to have returned a verdict in favor of Webner for emotional distress damages on his federal disability discrimi-

nation claim, the court likewise concludes that there is sufficient evidence in the record for a reasonable jury to have returned a verdict for emotional distress in favor of Webner on his state law retaliation claim. Accordingly the award of $12,500.00 for emotional distress on this claim will not be stricken, and Titan's motion for judgment as a matter of law on this claim is also denied.

### 5. Sufficiency of evidence—punitive damages

The jury awarded $100,000.00 in punitive damages on each of the two counts submitted to them, namely the federal disability claim and the state retaliation claim. Titan argues that there was insufficient evidence for the court to submit the claims of punitive damages to the jury for consideration under both federal and state law.

### a. Punitive damages—federal disability claim

Under this claim, Titan argues that the facts before the court are insufficient to establish that its actions were malicious or with reckless disregard for Webner's federally protected rights. Titan also argues that the decision to lay off Webner was not born of an intent to injure Webner, nor was it a reckless disregard of his rights.

■ Titan's argument that there is insufficient evidence to support the award for punitive damages on the federal disability claim is unavailing. In *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), the Supreme Court established a "two-tiered" analysis to determine when a party is entitled to punitive damages. That analysis requires that a plaintiff not only establish intentional discrimination but also "malice or reckless indifference" to the federally protected rights of the plaintiff. Punitive damages are available if the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

42 U.S.C. § 1981a(b)(1). The Eighth Circuit Court of Appeals likewise has employed this two-tiered analysis regarding punitive damages. *See e.g., Ogden v. Wax Works,* 214 F.3d 999, 1007–09 (8th Cir. June 6, 2000); *Kimbrough v. Loma Linda Dev., Inc.,* 183 F.3d 782, 785 (8th Cir.1999); *Deneen v. Northwest Airlines, Inc.,* 132 F.3d 431, 439 (8th Cir.1998); *Browning v. President Riverboat,* 139 F.3d 631, 637 (8th Cir.1998); *Coffman v. Tracker Marine,* 141 F.3d 1241, 1248 (8th Cir.1998); *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1063 (8th Cir.1997).

In support of its argument, Titan relies on the language in *Kolstad*, which provides that "[t]here will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard." *Kolstad,* 527 U.S. at ——, 119 S.Ct. at 2125. For example, an employer may be "unaware of the relevant federal prohibition"; it may very well believe that "its discrimination is lawful"; the theory on which an employee premises his claim may be "novel or poorly recognized"; or an employer may "reasonably believe" that it has a bona fide defense to charges of discrimination either because of its occupational qualifications or statutory exceptions. *Id.* Titan argues that it is undisputed that Mr. Gibbon's decision to layoff Webner was based upon his concern for Webner's well-being. Therefore, Titan claims that even if the court were to find that it committed an intentional act of discrimination, its reason for terminating Webner was in his best interest. Therefore, Titan argues that because terminating Webner, for his own good, is not the type of egregious act that demonstrates malicious conduct or deliberate indifference to the well being of the individual, the award of punitive damages should be stricken.

■ The court concludes that there was sufficient evidence in the record such that a reasonable jury could have concluded that Titan acted with reckless indiffer-

ence to Webner's rights under the ADA. First, the court points out the reason Titan presented during the trial for its decision to terminate Webner—his well being and his best interest—was disputed by Webner. Webner testified that although he experienced pain on the job, he could still perform the essential functions. His testimony is buttressed by Titan's doctor permitting Webner to resume working, albeit with certain restrictions. Therefore, this is an issue for the jury, and clearly the jury did not believe that Titan's decision to terminate Webner was in his best interest. A reasonable jury could have concluded that Webner was a qualified individual with a disability. As such, Titan's decision to terminate him because its was in his best interest is in complete disregard of the rights afforded to Webner under the ADA. So much so that a reasonable jury could have concluded that Titan's conduct was recklessly indifferent to Webner's rights under the ADA.

Additionally, the court finds that a reasonable jury could have awarded punitive damages on this claim, because both Mr. Gibbons and Mr. Borell testified they knew the ADA prevented an employer from discriminating against an employee with a disability. Moreover, Webner testified that when he was fired, he was told by Mr. Gibbons that it was due to his disability. Based on these set of facts, a reasonable jury could have concluded that Titan intentionally discriminated against Webner "in the face of a perceived risk that it would violate federal law." *See Kolstad,* 527 U.S. at ——, 119 S.Ct. at 2124 (explaining that the term "malice" and "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination); *Ogden,* 214 F.3d at ——, 2000 WL 718787 at *8 (holding that, based on employers's familiarity with the sexual harassment policy and his training, a jury could reasonably conclude that employer acted in the face of a perceived risk that his actions would violate federal law); *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1338 (11th Cir.2000) (holding that because the jury's amply supported finding that Sheriff Barrett intentionally discriminated against Alexander on account of his race, in concert with Sheriff Barrett's self-professed understanding that such treatment deprives an employee of his federal rights, a reasonable jury could conclude that Sheriff Barrett indeed acted "in the face of a perceived risk that [her] actions [would] violate federal law."); *E.E.O.C. v. Wal–Mart Stores, Inc.,* 187 F.3d 1241, 1246 (10th Cir.1999) (holding that because store manager testified he was familiar with the requirements of the ADA a reasonable jury could have concluded that the employer intentionally discriminated against plaintiff in the face of a perceived risk that its action would violate federal law and upholding award of punitive damages).

The court also concludes that there was sufficient evidence such that a reasonable jury could have awarded punitive damages based on Titan's reasons for terminating Webner. For example, Titan presented evidence that it required Webner to meet a certain productivity percentage, and because of its rotational system, it required Webner to perform all the different jobs on the assembly line. Webner presented evidence to the contrary. Therefore, a reasonable jury could have determined that Titan's conduct was malicious or recklessly indifferent to Webner's rights under the ADA, because a reasonable jury could have determined that Titan's reasons for terminating Webner were pre-textual. Furthermore, the court points out that it instructed the jury that it could award punitive damages if it found, *inter alia,* that it was appropriate to punish the defendant and to deter the defendant and others from like conduct in the future.

In sum, the court concludes that there is sufficient evidence in the trial record to sustain the award for punitive damages on Webner's federal disability discrimination claim. Therefore, Titan's motion for judgment as a matter of law on this claim must be denied.

### b. Punitive damages—state retaliation claim

Under Iowa law, punitive damages can be awarded if the jury finds "the conduct ... from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(a); *Schultz v. The Security Nat'l Bank*, 583 N.W.2d 886, 888 (Iowa 1998). The intentional acts of the defendant must be of "an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow...." *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990). Punitive damages are awarded, not because a plaintiff deserves them, but as punishment, to deter the defendant and others from repeating similar outrageous conduct. *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994). The conduct must be egregious. *Id.* Moreover, an award of punitive damages is appropriate only when a party acts with actual or legal malice. Actual malice is shown by such things as personal spite, hatred, or ill will. Legal malice is established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another. *Parks v. City of Marshalltown*, 440 N.W.2d 377, 379 (Iowa 1989).

Here, the court is persuaded that a reasonable jury could have found that Titan's conduct constituted a willful and wanton disregard for the right of Webner to investigate his workers' compensation claim. Webner presented sufficient evidence, which generated a genuine issue of material fact for the jury as to whether Webner was fired because, in pursing his workers' compensation claim, he requested to videotape his workstation. There was sufficient evidence in the record that a reasonable jury could find that Titan fired Webner because of the fear of what his attorney would find if he were allowed to exercise his rights to videotape his workstation. In *Tullis v. Merrill*, 584 N.W.2d 236 (Iowa 1998), the court determined that there was sufficient evidence presented at trial to submit the issue of punitive damages on the plaintiff's retaliation claim. *Id.* at 241. The *Tullis* court stated:

It is this court's view that discharging an employee for demanding back wages is the type of egregious conduct that would support substantial punitive damages. There are few things more important than a person's job. There is nothing in this record to indicate that the verdict of the jury was a result of passion or prejudice on its part.

Viewing the record, as we must, in the light most favorable to the jury's verdict, we cannot say the court erred in its ruling on this point. A jury could have determined by a preponderance of clear, convincing, and satisfactory proof that Merrill discharged Tullis in willful and wanton disregard for his employment rights. The sum awarded will deter future misconduct, and is not so out of proportion to the actual damages as to shock the conscience.

*Id.*

Similarly here, a reasonable jury could have determined by a preponderance of clear, convincing, and satisfactory evidence that Titan discharged Webner in willful and wanton disregard for his right to investigate his workers' compensation claim. The sum awarded by the jury will deter future misconduct. Therefore, Titan's motion for judgment as a matter of law for punitive damages under this claim must also be denied.

### 6. Sufficiency of evidence—retaliation claim

Titan also argues that the evidence of retaliation is unrelated to the pursuit of Webner's worker's compensation claim. Under Iowa law, to recover for a retaliatory discharge claim, a plaintiff has the burden of proving that he was discharged for filing or pursuing a worker's compensation claim. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988). A plaintiff must show that his claim for worker's compensation benefits was a

determining factor in the company's decision to terminate his employment. *Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 686 (Iowa 1990).

■ Here, the court finds that based on the evidence a reasonable jury could have concluded that Webner's request to videotape his workstation in pursuit of his worker's compensation claim was a determining factor in Titan's decision to terminate Webner. The court concludes that the timing between Webner's request to videotape his workstation and his termination—five days—, Webner's need to file a motion to compel in order to be allowed to videotape his workstation, Titan's policy against videotaping in the workplace, and Mr. Gibbons's testimony that the last thing that occurred before he was instructed to terminate Webner was his telephone conversation with Mr. Borell concerning the motion to compel, and Mr. Borell's testimony that he did not recall such a telephone conversation with Mr. Gibbons, provide sufficient evidence for a reasonable jury to find that there was a causal connection between the videotaping and Titan's decision to terminate Webner. Therefore, Titan's motion for judgment as a matter of law on this claim must also be denied.

In sum, the court concludes that there is sufficient evidence in the trial record to support the jury's finding of liability on Webner's claims of disability discrimination and retaliation. The court also finds that there is sufficient evidence in the record to sustain the award for emotional distress damages on Webner's disability discrimination claim and retaliation claim. The court further finds that there is sufficient evidence in the record to sustain the awards for punitive damages on Webner's disability discrimination claim and retaliation claim. Therefore, Titan's motion for judgment as a matter of law is denied.

### B. Motion For New Trial

■ Federal Rule of Civil Procedure 59, entitled "New Trials; Amendment of Judgments," states, in relevant part, as follows:

(a) **GROUNDS.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts in the United States . . . .

FED. R. CIV. P. 59(a). Regarding motions for new trial under Federal Rule of Civil Procedure 59, the court in *White v. Pence,* 961 F.2d 776 (8th Cir.1992) observed:

With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" *Ryan v. McDonough Power Equip.,* 734 F.2d 385, 387 (8th Cir.1984) (citation omitted). Similar language appears in *Brown,* 755 F.2d at 671–73; *Slatton [v. Martin K. Eby Constr. Co.],* 506 F.2d [505], 508 n. 4 [(8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975)]; *Bates [v. Hensley],* 414 F.2d [1006], 1011 [(8th Cir. 1969)], and early authority cited in *Bates. See also Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1266 (8th Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental process or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v.

*Id.* at 780. Thus, the court in *Pence* concluded the district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice. *Id.; see also Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1010 (8th Cir.2000) (stating that a motion for new trial should only be

granted if the jury's verdict was against the great weight of the evidence so a to constitute a miscarriage of justice) (citation omitted); *Shaffer v. Wilkes*, 65 F.3d 115, 117 (8th Cir.1995) (citing *Pence* for this standard); *Nelson*, 26 F.3d at 800 (stating "[a] motion for new trial should be granted if, after weighing the evidence, a district court concludes that the jury's verdict amounts to a miscarriage of justice."); *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1266 (8th Cir.) (observing that the correct standard for new trial is the conclusion that "the [jury's] verdict was against the 'great weight' of the evidence, so that granting a new trial would prevent a miscarriage of justice."), *cert. denied*, 513 U.S. 989, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994).

In support of its motion for new trial, Titan re-asserts the same arguments it asserted in its motion for judgment as a matter of law. The court previously examined these arguments under its analysis of Titan's motion for judgment as a matter of law, and concluded that the arguments did not sufficiently support granting such a motion. Similarly, because the jury's verdict does not weigh against the 'great weight' of the evidence, the court concludes that the jury's verdict does not amount to a miscarriage of justice. Therefore, Titan's Motion for a New Trial is denied.

### C. Plaintiff's Request For Fees and Expenses

#### 1. Fees claimed

The plaintiff seeks an award of $44,754.50 for attorneys' fees and $2,515.78 for expenses. These figures represent a combined total for Mr. Sherinian and Mr. Jorgensen. The number of hours claimed, and the hourly rate billed by plaintiff's attorneys are as follows: Mr. Sherinian claims 189.85 hours at an hourly rate of $175.00; Mr. Jorgensen claims 120.5 hours at an hourly rate of $120.00.

The court has discussed the standards by which fees are awarded in its prior decisions, including, for example, *Rural Water Sys. No. 1 v. City of Sioux Ctr.,*

*Iowa,* 38 F.Supp.2d 1057, 1062–63 (N.D.Iowa 1999), *Schultz v. Amick,* 955 F.Supp. 1087 (N.D.Iowa 1997), and *Houghton v. Sipco, Inc.,* 828 F.Supp. 631 (S.D.Iowa), vacated on other grounds, 38 F.3d 953 (8th Cir.1994). Thus, the court will not engage in another detailed recitation of applicable standards. Instead, suffice it to say that "a prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." ' " *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 94–1011, p. 4 (1976), in turn quoting *Newman v. Piggie Park Enter., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)); *accord Schultz,* 955 F.Supp. at 1109. Fees are usually calculated according to the "lodestar" method, which multiplies hours reasonably expended by a reasonable hourly rate. *Schultz,* 955 F.Supp. at 1110. Reductions may be made, however, for such things as partial success, duplicative hours or hours not reasonably expended, *see id.* at 1111–12, 1114–16, or for "block billing" or poor record-keeping. *See Houghton,* 828 F.Supp. at 643–44.

#### a. Reasonable hourly rate

██ Titan does not challenge the hourly rate billed by Mr. Sherinian, and the court agrees that his hourly rate is reasonable, in light of his substantial expertise and experience, especially in litigating employment discrimination claims in federal court. Titan does, however, challenge the hourly rate billed by Mr. Jorgensen, because it argues that Mr. Jorgensen failed to submit sufficient evidence to justify his proposed hourly rate. Therefore, Titan argues that Mr. Jorgensen's hourly rate should be reduced to $90.00 per hour. The court does not agree. While it is true that Mr. Jorgensen did not submit any evidence as to his ordinary billing rate, when probed by the court as to why he did not offer such proof, Mr. Jorgensen responded that he does not charge on an hourly basis; rather, Mr. Jorgensen stated that he takes

all of his cases on a contingency fee basis. In light of this, and the fact that Mr. Jorgensen has been practicing law for approximately twelve (12) years in Mason City, Iowa, as a general practitioner, the court finds that $120.00 per hour rate is fair and reasonable for an attorney with Mr. Jorgensen's level of experience and training in the area of civil litigation. Thus, the court finds no ground for reductions in this step of the "lodestar" calculation.

### b. Hours reasonably expended

Once again, Titan does not challenge the number of hours claimed by Mr. Sherinian, but does challenge the number of hours claimed by Mr. Jorgensen. Specifically, Titan argues that because both Mr. Sherinian and Mr. Jorgensen attended the depositions of Peter Sand, Richard Fisher, Bill Gibbons, Cheri Holley and Randy Webner, and because Mr. Sherinian billed Titan for these depositions, Mr. Jorgensen should not also be able to bill Titan for these depositions because it would be duplicative. Titan, therefore, requests that the total number of hours claimed by Mr. Jorgensen be reduced by ten hours, which represents the number of hours Mr. Jorgensen billed for these depositions. Once again, the court does not agree.

Generally, the court finds that having two attorneys present at a deposition is unnecessary and duplicative. However, as with any general rule, there are always exceptions, and this case falls within such an exception. The court finds that the presence of both Mr. Sherinian and Mr. Jorgensen at these depositions contributed to the efficient manner in which this case was handled, and thus, ultimately reduced the total fee claim. Therefore, the court will not reduce the number of hours claimed by Mr. Jorgensen.

However, the court appreciates that the jury returned a verdict in favor of Webner on two claims. Webner received damages for his claim of disability discrimination in violation of federal law, and he also received damages for his claim of wrongful termination in violation of Iowa public policy. Because there is no provision in Iowa common law that provides for an award of attorney fees in a wrongful termination case, the court concludes that a reduction in the number of hours billed is necessary. Titan argues that a fifty percent (50%) reduction is warranted, because the evidence submitted by Webner for the disability discrimination claim was not interrelated and did not overlap with the evidence submitted by Webner for the wrongful termination claim. The court does not agree. Indeed, the court finds that much of the evidence submitted by Webner for the disability discrimination claim was interrelated and did overlap with the evidence submitted by Webner for the wrongful termination claim, and therefore, it will not reduce plaintiff's fee claim by fifty percent (50%). Rather, the court finds that Mr. Sherinian's proposal to reduce the number of hours he allocated to this wrongful termination claim, as well as a ten percent (10%) reduction in the categories of trial, trial preparation, and discovery is more appropriate. The court, however, arrives at a slightly different figure for fees after such a reduction than did Mr. Sherinian. Mr. Sherinian requests $30,294.50, whereas the court finds that Mr. Sherinian is entitled to $29,311.00. The court arrives at this amount by multiplying the total number of hours billed by Mr. Sherinian—189.95—by his hourly rate—$175.00—for a total of $33,241.25. Then, the court reduced this amount by the total number of hours allocated to the wrongful termination claim, which Mr. Sherinian claims is 10.5 hours, plus the 10% reduction in the number of hours Mr. Sherinian allocated to trial (2.10 hours), trial preparation (7.67 hours), and discovery (.76 hours). Adding these hours, the court arrives at a total of 21.03 hours, which the court then multiplied by $175.00 for a total of $3,680.25. The court then subtracted $3,680.25 from $33,241.25 to arrive at a figure of $29,561.00, which the court then had to further reduce by $250.00, because this represented the sum

Webner received from Titan for its sanction for failure to comply with discovery requests. Thus, the court finds that Mr. Sherinian's total fee claim is $29,311.00. The difference between Mr. Sherinian's fee claim calculation and the court's fee claim calculation amounts to $983.50. Because the court will rely on its own calculation of Mr. Sherinian's fee award, it concludes that the total fee award for Mr. Sherinian is $29,311.00.

The court will now reduce the number of hours billed by Mr. Jorgensen, using the same method it reduced the number of hours billed by Mr. Sherinian. Mr. Jorgensen billed 120.5 hours at $120.00 per hour for a total fee claim of $14,460.00. Because Mr. Jorgensen did not segregate any of the time that was exclusively dedicated to the wrongful discharge claim, the court will seek guidance from the amount of time that Mr. Sherinian indicated he allocated to this claim. In doing so, the court arrives at the amount of $13,156.80, by reducing the number of hours Mr. Jorgensen billed for trial (2.3 hours), trial preparation (4.36 hours), as well as the number of hours for the September 9, 1997, telephone conference with Webner and Mr. Sherinian[1] (.7 hours) and the number of hours for Peter Sand's deposition (3.5 hours). Thus, taking the total number of these hours (10.86 hours) and multiplying it by Mr. Jorgensen's $120.00 hourly rate, the courts arrives at a figure of $1,303.20. Thus, Mr. Jorgensen's fee request for $14,460.00 must be reduced by $1,303.20. In so doing, the court finds that Mr. Jorgensen's total fee award is $13,156.80.

1. Mr. Sherinian submitted exhibit H, which indicates the special time that he allocated to the wrongful termination claim included this telephone conference. Therefore, the court finds that because Mr. Jorgensen was involved in this telephone conference the time allotted for it should likewise be reduced from his total number of hours billed.

2. On May 10, 2000, Webner filed an Amendment to Fee Application, in which he requested that the portion of the expert witness fee for Clark Williams be considered as part of

## 2. Expenses claimed

Webner originally requested $2,515.78 for out of pocket expenses. However, during the hearing on these motions, the court permitted Webner's counsel to orally amend his application for attorneys' fees and expenses to include the fee for his expert witness, Clark Williams.[2] Webner's counsel had improperly requested this fee under the Bill of Costs. Therefore, the total expenses claimed by Webner is presently $3,793.79 (Mr. Williams's fee for $1,278.01 plus $2,515.78).

The court concludes that the expenses incurred by Mr. Sherinian and Mr. Jorgensen are reasonable. Therefore, the total awarded to Webner for expenses is $3,793.79 In sum, the total awarded to Webner for attorneys' fees and expenses is $46,261.59 ($42,467.80 in allowed fees + $3,793.39 in allowed expenses = $46,-261.59). In light of the skill, effort, and results in this litigation, the court believes that this award is not only well earned and deserved, but modest as well.

## D. Plaintiff's Request For Prospective Equitable Relief

In this case, both parties agree that reinstatement would not be an appropriate remedy. However, both parties do not agree on whether front pay is appropriate. Webner asserts that front pay is appropriate in this case, and requests a front pay award in the amount of $9,048.00 [3]. Webner arrives at this figure by calculating the difference between his current hourly rate compared to the hourly rate that he contends he would have received if still employed at Titan over a period of three

plaintiff's Application for Attorneys' Fees under 42 U.S.C. § 2000e et seq., and not part of plaintiff's Bill of Costs.

3. The court points out that Webner asserts that the pay differential for three years would be $9,052.00. The court, however, disagrees and finds that Webner's calculation was an oversight, because $3,016.00, which represents Webner's assertion of the pay differential per year, times 3 years is equal to $9,048.00, not $9,052.00.

years. Specifically, Webner testified that he is currently working at Burns International Security and is earning $7.25 an hour. Webner further testified that he had recently received a raise to his present rate of pay but did not expect raises in the future, and testified that there were no possibilities for a promotion. Webner asserts that Titan's personnel manager, Dick Fischer, indicated that in 1999, the starting rate of pay at Titan was $7.80 per hour with a $.50 per hour increase after six months, and then a $.40 per hour increase after the second six months. Webner argues that if he had continued to work at Titan, he would have been earning $8.70 per hour by the year 2000, or a difference of $1.45 per hour ($8.70–$7.25). Thus, Webner claims that assuming he worked an ordinary forty-hour week, the pay differential would be $3,016.00 per year. Webner asserts that he will need three years to find a job that is equal in compensation to the position at Titan, and, therefore, Webner requests front pay damages in the amount of $9,048.00 ($3,016.00 × 3).

Titan argues that an award of front pay to Webner would be inappropriate, however, to the extent that the court awards front pay, Titan asserts that the amount awarded should be limited to one year. Although Titan employs the same calculus in determining the amount of front pay, which entails calculating the wage differential between what Webner earns at his present job and what he would have earned at Titan, the wage differential that Titan arrives at per year is different from the wage differential that Webner arrives at per year. Titan agrees with Webner's contention that his present salary is $7.25 per hour, and that the starting salary at Titan is currently $7.80, which is a difference of $.55. However, Titan asserts that Webner would have received only a $.50 increase after six months, or $8.30 [4] per

hour, and does not assert, as does Webner, that Webner would have received an additional increase of $.40 after the second six months. Titan asserts that in total Webner's wage differential would have been $1.05 per hour, or $42 per week. Thus, because Titan argues that any front pay that is awarded to Webner should be limited to one year, Titan asserts that Webner's lost pay differential would be $2,184.

This court has extensively articulated and discussed the equitable relief available under Title VII, as well as examining the factors considered in ordering reinstatement and awarding front pay in *Prine v. Sioux City Community School District*, 95 F.Supp.2d 1005 (N.D.Iowa) and *Ogden v. Wax Works*, 29 F.Supp.2d 1003 (N.D.Iowa 1998), *aff'd* 214 F.3d 999 (8th Cir.2000). Therefore, rather than provide a full reprisal of those factors here, the court will identify those factors in conjunction with Webner's request for front pay.

### 1. Reinstatement

 As indicated previously, both parties agree that reinstatement is an inappropriate remedy in this case, and upon reviewing the record, the court agrees that reinstatement is inappropriate. Notwithstanding, before the court may consider the propriety of a front pay award, it must be assured that reinstatement is an infeasible or otherwise inappropriate remedy. *See Williams*, 964 F.2d at 730 (remanding issue of front pay and reminding magistrate judge that front pay should not be awarded "unless reinstatement is impossible or impracticable...." quoting *Wildman*, 771 F.2d at 616). In *Ogden*, this court identified the following factors that are potentially useful in determining whether reinstatement is an appropriate remedy:

---

**4.** In its brief, Titan asserts that Webner would have been making $8.20 per hour if still employed at Titan. The court understands this figure to be incorrect, and merely an oversight by Titan. Indeed, Titan expressly states that "the current starting rate is $7.80 with a

$.50 increase after six months, or a total of $8.20." Titan's Brief at 12. Clearly, $7.80 plus $.50 is equal to $8.30, and therefore, the court will re-calculate Titan's request for front pay limited to one year with this figure.

(1) whether the employer is still in business, *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1423 (4th Cir.1991); (2) whether there is a comparable position available for the plaintiff to assume, *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 398 (6th Cir.1993), *cert. denied,* 513 U.S. 808, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994); *Duke,* 928 F.2d at 1423; (3) whether an innocent employee would be displaced by reinstatement, *Ray v. Iuka Special Mun. Separate Sch. Dist.,* 51 F.3d 1246, 1254 (5th Cir.1995); *Roush,* 10 F.3d at 398; *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1370–71 (7th Cir.1992); (4) whether the parties agree that reinstatement is a viable remedy, *Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; (5) whether the degree of hostility or animosity between the parties—caused not only by the underlying offense but also by the litigation process—would undermine reinstatement, *Cowan,* 140 F.3d at 1160; *Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; *Standley,* 5 F.3d at 322; *McKnight,* 973 F.2d at 1370–71; *Lewis v. Federal Prison Indus., Inc.,* 953 F.2d 1277, 1280 (11th Cir.1992) (citation omitted); *Duke,* 928 F.2d at 1423; (6) whether reinstatement would arouse hostility in the workplace, *Cowan,* 140 F.3d at 1160; *Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; *Standley,* 5 F.3d at 322; *McKnight,* 973 F.2d at 1370–71; *Lewis,* 953 F.2d at 1280; *Duke,* 928 F.2d at 1423; (7) whether the plaintiff has since acquired similar work, *Roush,* 10 F.3d at 398; (8) whether the plaintiff's career goals have changed since the unlawful termination, *McKnight,* 973 F.2d at 1370–71; and (9) whether the plaintiff has the ability to return to work for the defendant employer—including consideration of the effect of the dismissal on the plaintiff's self-worth, *Newhouse,* 110 F.3d at 641; *Lewis,* 953 F.2d at 1280.

*Ogden,* 29 F.Supp.2d at 1010.

 Here, there was a paucity of evidence concerning the factors that are useful in determining whether reinstatement is an appropriate remedy. While it is true

that Titan is still in business in Ventura, Iowa, there was no testimony that established the availability of a position for Webner to resume working at the facility. Similarly, there was no evidence adduced at trial concerning whether an innocent employee would be displaced by reinstatement, whether reinstatement would arouse hostility in the workplace, whether Webner's career goals have changed since the unlawful termination, and whether Webner has the ability to return to work for Titan, including consideration of the effect of the dismissal on Webner's self-worth. There was testimony indicating that Webner secured other employment within a few months of his termination from Titan, however, this employment is not similar in the sense that it is not an assembly line job, and because Webner does not receive the same rate of pay that he would have received if he was still employed at Titan. Furthermore, in his brief in support of claim for front pay, Webner argues that this litigation has engendered a great deal of hostility between the parties and, given the retaliation to which Webner was subjected, Webner asserts that reinstatement would not be productive. The court agrees. While Titan is correct in that there was no evidence adduced at trial concerning hostility between the parties, the court would be remiss if it failed to appreciate that a certain degree of hostility between the litigants will ensue simply as a byproduct of this litigation. Most importantly, however, the court notes that both parties agree that reinstatement is not a viable option. Therefore, because the parties are in the best position to gauge the feasibility or practicality of the remedy, the court agrees with the parties' mutual belief that reinstatement is not appropriate in this case.

Thus, having reviewed the evidence, the court is left with the firm conviction that reinstatement is not an appropriate remedy in this case. Accordingly, the court will turn to Webner's request for front pay. *Ogden,* 29 F.Supp.2d at 1010 (explaining that if the court concludes that reinstate-

ment is an inappropriate form of prospective relief, it may still elect to award the equitable remedy of front pay) (citation omitted).

### 2. Front pay

As with the analysis regarding reinstatement, the court will consider those factors traditionally approved by other courts, as well as this court, in a front pay determination. In *Ogden*, this court enumerated the following factors:

(1) the plaintiff's age, *Barbour*, 48 F.3d at 1280; (2) the length of time the plaintiff was employed by the defendant employer, *Standley*, 5 F.3d at 322; (3) the likelihood the employment would have continued absent the discrimination, *Barbour*, 48 F.3d at 1280; *Standley*, 5 F.3d at 322; (4) the length of time it will take the plaintiff, using reasonable effort, to secure comparable employment, *Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 194–95 n. 13 (3d Cir.1998); *Kelley*, 140 F.3d at 355 n. 12; *HBE Corp.*, 135 F.3d at 555; *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 n. 8 (7th Cir.1994); *Roush*, 10 F.3d at 399; *Standley*, 5 F.3d at 322; *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir.1993); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1160 (6th Cir.1985); (5) the plaintiff's work and life expectancy, *Paolella*, 158 F.3d at 194–95 n. 13; *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Shore*, 777 F.2d at 1160; (6) the plaintiff's status as an at-will-employee, *Barbour*, 48 F.3d at 1280; *Schwartz v. Gregori*, 45 F.3d 1017, 1023 (6th Cir.), *cert. denied*, 516 U.S. 819, 116 S.Ct. 77, 133 L.Ed.2d 36, (1995); (7) the length of time other employees typically held the position lost, *Barbour*, 48 F.3d at 1280; (8) the plaintiff's ability to work, *Lewis v. Federal Prison Indus. Inc.*, 953 F.2d 1277, 1281 (11th Cir.1992); *Ortiz v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 852 F.2d 383, 387 (9th Cir.1987); (9) the plaintiff's ability to work for the defendant-employer, *Id.*; (10) the employee's efforts to mitigate damages, *Paolella*, 158 F.3d at 194–95 n. 13; *Barbour*, 48 F.3d at 1280; *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Shore*, 777 F.2d at 1160; and (11) the amount of any liquidated or punitive damage award made to the plaintiff, *Hadley v. VAM P T S*, 44 F.3d 372, 376 (5th Cir.1995); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir.1990); *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985).

*Ogden*, 29 F.Supp.2d at 1015.

### Factor (1)—plaintiff's age

The first factor in the analysis is a consideration of the plaintiff's age. *See Barbour*, 48 F.3d at 1280. Although Webner testified that he is forty-nine (49) years old, the court finds this factor to have no bearing on its front pay determination because no evidence was offered regarding the significance of Webner's age to his proposed front pay request.

### Factor (2)—length of employment

The evidence reveals that Webner was employed by Titan from 1991 until 1996. Although Webner was off from work for periods of time due to his work-related injuries, he continued to be employed by Titan. Therefore, the court finds that the relative longevity of Webner's employment with Titan weighs slightly in favor of a front pay award. *See Standley*, 5 F.3d at 322.

### Factor (3)—likelihood plaintiff would have remained in his position; and (6)—plaintiff's status as an at-will-employee

The court recognizes that Webner was an at-will-employee. However, the court finds that absent the discrimination, it is likely Webner would have remained in his position with Titan for some time to come. Although this factor is subject to some speculation, *see Barbour*, 48 F.3d at 1280; *Standley*, 5 F.3d at 322, the degree of speculation is reduced by the fact that during his last week of work, he performed the assembly work at levels acceptable to Titan. Also, Webner testified that he thoroughly enjoyed working on the assem-

bly line at Titan. Indeed, upon his termination Webner testified that he felt like he had lost his best friend. This factor indicates that an award of front pay is appropriate.

### Factor (4)—length of time necessary to secure comparable employment

The evidence at trial established that Webner obtained other employment within a relatively short period of time. However, the record also establishes that Webner is not receiving the same salary he would have received if he still worked at Titan. Although the court takes issue with the length of time Webner asserts he will need to secure comparable employment—three (3) years—the court is persuaded that, at the present time, Webner is not receiving the salary that he would have received if employed at Titan. Thus, this factor supports an award of front pay.

### Factors (5)—plaintiff's work and life expectancy; and (7)—the length of time other employees typically held the position

The court finds the fifth factor—Webner's life and work expectancy, *see Paolella,* 158 F.3d at 194–95 n. 13—and the seventh factor—the length of time other employees typically hold the position Webner lost, *see Barbour,* 48 F.3d at 1280—to be neutral in the front pay analysis. There was no testimony regarding the significance of Webner's work or life expectancy to his ability to secure comparable employment. Absent some evidence on this factor, the court would be left to its own devices to speculate as to the impact this consideration may or may not have on Webner's ability to secure comparable employment. The court declines to engage in such speculation. Similarly, no evidence was presented regarding the length of time other employees typically hold the assembly line position Webner lost. Again, the court is unwilling to speculate on this factor and therefore considers it to be a neutral consideration in the determination of the front pay award.

### Factors (8)—ability to return to full-time work; and (9)—ability to return to work for defendant-employer

The court finds the eighth factor—ability to return to full-time work—to weigh in favor of the front pay analysis. Although Webner was able to secure employment within a relatively short period of time from his termination, Webner's physical limitations made it more difficult for him to secure employment. Webner testified that several potential employers would not hire him because of his back injuries. Thus, Webner's physical limitations reduced the number of full-time positions available to him, thereby supporting an award of front pay. The court finds the ninth factor—ability to return to work for defendant-employer—also weighs in favor of a front pay award. Indeed, Titan states that is does not believe that Webner is able to work in the assembly jobs it has available.

### Factor (10)—plaintiff's effort to mitigate damages

Titan does not take issue with Webner's efforts to mitigate his damages, stating that Webner has reasonably sought to gain other employment. The court agrees. Thus, this factor is an appropriate consideration in the award of front pay, *see Paolella,* 158 F.3d at 194–95 n. 13; *Barbour,* 48 F.3d at 1280; *Downes,* 41 F.3d at 1141; *Roush,* 10 F.3d at 399; *Shore,* 777 F.2d at 1160, and the court finds that it weighs in favor of such an award.

### Factor (11)—the amount of any punitive damage award

The court must also consider what impact, if any, Webner's punitive damage award has on the analysis. The jury awarded Webner punitive damages in the sum of $200,000.00. As this court explained in *Ogden,* several circuit court of appeals have required the trial court to consider liquidated damage awards in fashioning front pay remedies under the ADEA. *Ogden,* 29 F.Supp.2d at 1018. Because it is unclear whether the same con-

sideration should be afforded to punitive damage awards in Title VII cases, the court adopts its conclusion in *Ogden*, namely that consideration of the amount of punitive damages awarded in this case would be an improper factor in fashioning the equitable relief of front pay. Specifically, this court stated:

> The court concludes that consideration of the amount of punitive damages awarded in this case would be an improper factor in fashioning the equitable relief of front pay. Although at least one court has justified the applicability of this factor by analogizing liquidated damages under the ADEA to punitive damages under Title VII, *see Hadley*, 44 F.3d at 376, this court believes the sounder course is to focus on the "make-whole" purposes of prospective equitable relief. Punitive damages, by their nature, are intended to punish the defendant for its discriminatory conduct and to deter the defendant from engaging in like conduct in the future. On the other hand, the purpose of front pay is to make the plaintiff whole. *See Cowan*, 140 F.3d at 1160; *Standley*, 5 F.3d at 322. Obviously, these remedies are designed to achieve very different goals. In this court's view, the amount of punitive damages awarded is simply a neutral consideration in the front pay analysis. *Cf. Newhouse*, 110 F.3d at 643 (declaring in ADEA case that the amount of liquidated damages awarded "does not affect the ... court's determination of appropriate equitable relief.").

*Ogden*, 29 F.Supp.2d at 1019. If, however, consideration of the amount of punitive damages awarded in this case would be a proper factor in fashioning the equitable relief of front pay, the court concludes that, it is simply a neutral consideration in the front pay analysis.

 After applying factors considered by other courts in determining the propriety of front pay awards, as well as other factors pertinent to the circumstances of this case, the court is persuaded that a front pay award is warranted here. Having made this determination, the court will turn to its calculation of the proper amount and duration of Webner's front pay award.

### Calculation of the front pay award

The first step in calculating Webner's front pay award is to determine its proper duration. The court recognizes that a front pay award will contain some degree of speculation. However, the award should not be "unduly speculative." *Barbour*, 48 F.3d at 1280; *McKnight*, 973 F.2d at 1372. Webner has requested three years of front pay compensation. This court in *Ogden* was critical of plaintiff Ogden's request for eight years of front pay basing such a lengthy award on her testimony alone. *Ogden*, 29 F.Supp.2d at 1018 (stating that the court is not convinced that Ogden's testimony—without more—provides an adequate basis to support the length of front pay requested). Here, the court is likewise critical of Webner's request for three years of front pay basing such duration on Webner's testimony alone.

After considering the evidence presented, the court finds that a three year front pay award would be excessive. The court concludes that a two year front pay award would be more appropriate under the circumstances of this case. A two year front pay award is appropriate because it will strike the proper balance between the need to make Webner "whole" and the need to avoid excessive front pay awards.

The next step is to calculate Webner's estimated yearly income from Titan for these two years less his mitigation damages. The starting point is the base rate that Webner would have earned had he remained at Titan. The evidence reflects that the starting hourly rate at Titan is $7.80, with a $.50 increase after the first six months, or $8.30. As indicated previously, Webner argues that he would have been entitled to an additional $.40 increase after the second six months, for an hourly rate of $8.70. The court, however, has reviewed that portion of the transcript and is not persuaded that Webner would have

received the additional $.40 increase in pay, primarily because Titan has complete discretion in determining the amount of increase an employee is entitled. Specifically, when asked what the pay increase was after the second six month period, Dick Fisher responded: "Well, generally it's a percentage, sir, and the supervisor, the operations manager evaluates that particular person as to their work ethics and then a decision is to be made whether we're talking $.20, $.25, $.30, $.40 an hour increase." Thus, the court finds that although Webner would have received an additional increase after the second six month period, the court is unwilling to speculate that Webner would have received the highest increase, or $.40. Based on the range of potential increases, $.20 to $.40, the court concludes that an additional increase after the second six month period of $.20 per hour for a total hourly rate of $8.50 is reasonable and is not unduly speculative.

This hourly rate of $8.50 adds up to an annual income of $17,680.00, which is based on a forty-hour work week and a fifty-two week pay period. This figure represents the annual income that Webner would have been making each year if he was still employed at Titan. Therefore, over a two year period at Titan, Webner would have made $35,360.00. This figure minus the annual income Webner currently makes, $15,080.00 ($7.25 × 40 hours × 52 weeks) and multiplied by 2 years, or $30,160.00, and the court arrives at a wage differential of $5,200.00.

The final step in the front pay calculation is to reduce the award to present value. In *Ogden*, the court explained the different methods courts employ in reducing the award to present value. *Id.* at 1021. Thus, the court will not reprise the different methods articulated in *Ogden*. Rather, adhering to the same principle in *Ogden* and *Prine*, the court finds that given the relatively short duration of the front pay award, any interest that would be earned on the sum will be offset by inflation and future wage increases. Future wage increases have not been ac-

counted for in the calculation. Therefore, the final sum of Webner's front pay award is $5,200.00.

### III. CONCLUSION

The court has considered each of the grounds raised in Titan's motion for judgment as a matter of law, and concludes that the motion must be **denied**. Likewise, the court has considered the grounds raised by Titan in support of its motion for new trial, and finds that this motion must too be **denied**. The court also concludes that plaintiff Webner is entitled to attorneys' fees and expenses in the amount of **$46,261.59**. Furthermore, the court awards Webner front pay in the amount of **$5,200.00**.

**IT IS SO ORDERED.**