# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1604

_____

Melissa Forshee,                           *
                                           *
    Plaintiff - Appellee,           *
                                           *    Appeal from the United States
v.                                         *    District Court for the
                                           *    Eastern District of Arkansas.
Waterloo Industries, Inc.,                 *
                                           *
    Defendant - Appellant.          *

_____

Submitted:  December 14, 1998

Filed:  May 27, 1999

_____

Before BEAM and LOKEN, Circuit Judges, and BOGUE,[*] District Judge.

_____

LOKEN, Circuit Judge.

On May 31, 1995, Melissa Forshee was hired as a temporary employee at the Waterloo Industries factory in Pocahontas, Arkansas.  On June 17, her supervisor, Brian Ross, approached Forshee at work and told her "he could make it easier on me being hired on full time" if she would provide "sexual favors."  Forshee refused.  On June 19, Ross told Forshee "he wasn't happy with my job performance" and sent her back to the employment agency, effectively terminating her as a temporary employee.

_____

[*]The HONORABLE ANDREW W. BOGUE, United States District Judge for the District of South Dakota, sitting by designation.

Forshee commenced this Title VII action against Waterloo, alleging unlawful sex discrimination. A jury returned a verdict in her favor, awarding $10,369 in back pay damages, $9,631 in compensatory emotional distress damages, and $14,733 in attorneys' fees. Waterloo appeals, arguing the district court erred in denying Waterloo's motion for judgment as a matter of law, in instructing the jury on back pay damages, and in submitting the issue of emotional distress damages, and abused its discretion in awarding attorneys' fees. We affirm the denial of judgment as a matter of law but reverse in part the award of damages and attorneys' fees.

## I. Denial of Judgment as a Matter of Law

Waterloo argues the district court erred in submitting Forshee's claim of "quid pro quo sexual harassment" to the jury and in denying Waterloo's motion for judgment as a matter of law. As the Supreme Court recently noted, the term "quid pro quo sexual harassment," though recognized as a distinct cause of action in many cases (usually in dicta), often adds little to a more straightforward Title VII analysis:

> To the extent [the terms quid pro quo and hostile work environment] illustrate the distinction between cases involving a threat which is carried out and offensive conduct in general, the terms are relevant when there is a threshold question whether a plaintiff can prove discrimination in violation of Title VII. *When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.* For any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive.

Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2265 (1998) (emphasis added). In this case, Forshee seeks damages for wrongful discharge, not for supervisor Ross's prior sexual advance. That makes this an analytically simple Title VII action for

wrongful discharge on account of sex discrimination. To instruct the jury on the elements of so-called quid pro quo sexual harassment, as the district court did without objection by either party, was unnecessary but not plain error.

Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the non-moving party. Fed. R. Civ. P. 50(a)(1). Viewing the evidence in the light most favorable to Forshee, as we must, we uphold the denial of Waterloo's motion. Forshee testified that she refused supervisor Ross's request for sexual favors. Though Ross vehemently denied making such a request, the jury was entitled to resolve this credibility issue in Forshee's favor. Forshee was terminated as a temporary Waterloo employee the work day following her rejection of Ross's sexual advance. Waterloo contends Forshee did not thereby suffer a tangible job detriment. That contention is totally without merit. See Ellerth, 118 S.Ct. at 2268-69 ("tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

The principal issue at trial was whether Ross's sexual advance was causally linked to Forshee's subsequent termination. Waterloo presented testimony by superintendent Ken Bates that he made the decision to terminate Forshee because he heard her make profane remarks about her work assignments that were unacceptable behavior for a temporary employee. Three other witnesses testified that Bates, not Ross, made the decision to terminate Forshee. Forshee denied she had ever used profanity and noted the absence of prior complaints about her work performance. Though the question is close, we conclude a reasonable jury could reject the testimony of Waterloo's witnesses and find that Ross caused Forshee's termination because she had rejected his sexual advance. Accordingly, the district court properly denied Waterloo's motion for judgment as a matter of law.

## II. Damage Issues

Waterloo challenges both components of the compensatory damages awarded Forshee by the jury. Regarding the award of $10,369 in lost wages, Waterloo argues it was based upon the speculative theory that Forshee would have become a full-time Waterloo employee had she not been terminated, whereas the evidence established that Waterloo would have laid off Forshee along with its other temporary employees in December 1995 due to the cyclical nature of its business. We reject this contention for two interrelated reasons. First, it was not properly preserved because Waterloo did not include in the record on appeal whatever portion of the trial record, such as Forshee's damage exhibits or closing argument, would permit us to infer how the jury might have calculated this portion of its damage award. Second, Waterloo's contention that no lost wages could be awarded after December 1995 is obviously wrong. Waterloo first employed Forshee as a temporary employee for six months in the last half of 1994. She was hired again in that capacity in May 1995, and there was testimony by Waterloo witnesses that the company regularly hired temporary employees to meet its cyclical needs during the last half of each year. Thus, even if the theory that Forshee would have been made a full-time employee is quite speculative, that does not undermine the jury's relatively modest award for lost wages. Waterloo complains that the district court *instructed* the jury to award damages for the entire back pay period, as in Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1098-99 (8th Cir. 1982). But we read the instruction as simply defining the back pay period and letting the jury decide how much Forshee would have earned at Waterloo had she not been wrongfully terminated. The lost wages portion of the judgment is affirmed.

Waterloo next argues the district court erred in submitting the issue of emotional distress damages to the jury. We agree. Forshee's evidence of emotional distress was based entirely upon her own testimony. She testified that after being terminated she "went home and sat and cried about the rest of the day," and that she was forced to take a job at lower pay and work two jobs. Significantly, her distress emanated from

-4-

the loss of a job, not from Ross's improper sexual advance: "I didn't really think about that right then. The only thing I knew was, I got fired, lost my job, didn't have a job anymore."

An award of damages for emotional distress must be supported by competent evidence of "genuine injury." Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978). While a compensatory damage award may be based solely on plaintiff's own testimony, Forshee's testimony did not identify and describe the kind of severe emotional distress that warranted the awards in cases such as Delph v. Dr. Pepper Bottling Co., 130 F.3d 349, 357-58 (8th Cir. 1997). Forshee suffered no physical injury, she was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress. After the termination, rather than return to the employment agency, Forshee found a new job on her own almost immediately, and while her income declined, there is no testimony explaining why the award of damages for lost wages is not sufficient to make her whole. Finally, while Ross's sexual advance was disgusting, it did not humiliate Forshee in front of her co-workers, compare the harassing conduct of co-workers in Hall v. Gus Construction Co., 842 F.2d 1010, 1012 (8th Cir. 1988) (upholding modest emotional distress awards), and Forshee admitted it was not the source of her post-termination distress. We conclude the evidence was insufficient to submit this issue to the jury. Thus, the award of $9,631 in emotional distress damages must be reversed. See Price v. City of Charlotte, 93 F.3d 1241, 1250-56 (4th Cir. 1996), cert. denied, 520 U.S. 1116 (1997); Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 939-40 (5th Cir. 1996), cert. denied, 519 U.S. 1091 (1997).

### III. The Award of Attorneys' Fees

Conceding that Forshee as prevailing party is entitled to an attorneys' fee award, see 42 U.S.C. §2000e-5(k), Waterloo argues the district court abused its discretion by awarding Forshee's lead attorney an enhanced fee based upon an hourly rate above his

normal hourly rate.  We agree.  Forshee's motion for an attorneys' fees award represented that attorney Murrey Grider's normal hourly rate was $100 per hour and requested that this rate be enhanced to $150 per hour because Grider represented Forshee "on a contingency basis."  Without explanation, the district court based its award on an hourly rate of $125 for attorney Grider.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v.  Eckerhart, 461 U.S. 424, 433 (1983).  Reasonable hourly rates are "the prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886, 895 (1984).  In City of Burlington v. Dague, 505 U.S. 557, 567 (1992), the Supreme Court held that "enhancement for contingency is not permitted under [federal] fee-shifting statutes."  Thus, Forshee's motion to the district court requested a fee enhancement for an impermissible reason.

An upward adjustment to an attorney's lodestar hourly rate is permissible "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts."  Pennsylvania v. Delaware Valley Citizens' Council for Clear Air, 478 U.S. 546, 565 (1986).  "Because the lodestar amount may already compensate the applicant for exceptionally good service and results, however, the fee applicant must do more than establish outstanding service and results.  The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended."  In re Apex Oil Co., 960 F.2d 728, 732 (8th Cir. 1992).  Here, the case was not unusually difficult or complex to prepare and try, the result while favorable to Forshee was not exceptional, Forshee gave only an impermissible reason for enhancement, and the district court made no "detailed findings" that would justify an enhanced fee award.  In these circumstances, we conclude that an award to attorney Grider based upon an hourly rate above his normal hourly rate of $100 per hour was an abuse of discretion.  See Kientzy v.

McDonnell Douglas Corp., 990 F.2d 1051, 1062 (8th Cir. 1993).  Finally, we reject Waterloo's contention that the district court abused its discretion in awarding a fee based upon the hours attorney M. Joseph Grider spent in assisting attorney Murrey Grider prepare for and attend the trial.  The court reasonably reduced the hours claimed by Joseph Grider to eliminate any duplicative effort.

The judgment of the district court dated January 21, 1998, is modified to eliminate the award of $9,631.00 compensatory damages.  Paragraph 2 of the district court's order of February 10, 1998, awarding attorneys' fees is modified to read: "Plaintiff's counsel, Murrey L. Grider, is awarded a fee at the rate of $100 per hour for 105.70 hours for a total of $10,570.00."  As so modified, the judgment and order are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.