SMITH, Circuit Judge,
concurring in part and dissenting in part.
The majority labels this sexual harassment case as one involving “the question of human decency.” Although I agree that decency should be the baseline for all human interaction, including workplace interaction, Title VII of the Civil Rights Act involves a different inquiry-the question of discrimination.[5] Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of “race, color, religion, sex, or national origin.” 42 U.S.C. § 2000e-2(a)(l). It expressly prohibits refusing to hire or discharging an employee based on a prohibited factor. Id. Likewise, Title VII also expressly provides that “[i]t shall be an unlawful employment practice for an employer ... otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin.” Id.
After careful review of the relevant precedents of the Supreme Court and those of our circuit, I consider the district court’s grant of judgment as a matter of law to be a much closer call than the majority allows. The evidence of discrimination presented in this case, while adequate, is not as cogent as the majority states.
I.
Title VII makes no express mention of sexual harassment; the Supreme Court, *713 however, has recognized that “[t]he phrase ‘terms, conditions, or privileges of employment’ evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.” Harms v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citing Mentor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (other internal quotation marks and citations omitted)). The Court went on to explain that “not all workplace conduct that may be described as ‘harassment’ affects a ‘term, condition, or privilege’ of employment within the meaning of Title VII.” Id. at 67, 106 S.Ct. 2399 (citing Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir.1971)).
In cases like Ms. Eich’s-commonly described as hostile-environment cases-an employer’s harassing actions towards an employee do not constitute employment discrimination under Title VII unless there is proof that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. See Duncan v. General Motors Corporation, 300 F.3d 928, 933 (2002); Spicer v. Va., Dep’t of Corr., 66 F.3d 705, 710 (4th Cir. 1995) (en banc). Therefore, under our circuit’s jurisprudence, a pervasively hostile or abusive atmosphere does not create a cause of action for sexual harassment under Title VII unless the plaintiff is able to show discriminatory treatment because of sex. Meritor Sav. Bank, 477 U.S. at 66, 106 S.Ct. 2399. “[WJorkplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations.” Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). “ ‘The critical issue, Title VII’s text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.’ ” Id. (quoting Harris, 510 U.S. at 25, 114 S.Ct. 367 (1993) (Ginsburg, J., concurring)).
Thus, a finding of “diseriminatpon] ... because of ... sex” depends not simply on identifying the various harassing behaviors to which an individual is exposed. Rather, the showing must support an inference that the harassing conduct is both “discri-minat[ion]” and is “because of ... sex”-in other words, but for the employee’s gender, he or she would not have been the victim of the discrimination. See Oncale, 523 U.S. at 80-81, 118 S.Ct. 998.
After applying the foregoing principles, I am left with the opinion that several of the episodes of harassing behavior upon which the majority relies, considered-as I am required to do-in the light most favorable to Ms. Eich, do not amount to discrimination. First, I am troubled by the characterization of Gillespie’s frequent visits to Ms. Eich’s office-discussing work-related and personal topics-as discriminatory behavior. The evidence showed that Gillespie spent large amounts of time talking to all of the sergeants, both male and female. Also, the record shows that these “personal” discussions had a mutuality. Ms. Eich voluntarily discussed personal matters, including such intimate topics as her breast augmentation and a rape she suffered, with both of the accused harassers. Because I see no nexus between Gillespie’s frequent visits and Ms. Eich’s gender, I believe this evidence should have no material impact on the establishment of Ms. Eich’s prima facie case of harassment.
*714 Second, Gillespie’s comments-made during a cold football game-regarding fishing in his pants to find “it” in order to go to the restroom and supplying a jar of Vaseline to an individual arrested for child molestation were not individually directed at Ms. Eich. Instead-as noted by the majority-the comments were made in group settings, where both male and female officers were present. Similarly, Drake’s simulated sex act with a nightstick also took place in a group setting. There is simply no evidence that Ms. Eich was the “individual target” of this vulgar talk and behavior. And, as Duncan notes, “[a]n offensive workplace atmosphere does not amount to unlawful discrimination unless one gender is treated differently than the other.” Id. at 933. Accordingly, I do not rely on these acts in arriving at my conclusion that Ms. Eich presented a case adequate to warrant consideration by the jury.
Third, the majority offers an incomplete description of Ms. Eich’s allegation-which is presumed to be true-that Drake frequently touched her hair and shoulders. The majority noted that another female employee, Frances Behm, testified that Drake also touched her hair and shoulders. The majority did not, however, mention the uncontroverted evidence that Drake tended to touch both males and females when he talked to them. Behm testified that she observed Drake touch other personnel, and that when she was touched by Drake she did not consider the behavior to be “sexual.” I do not view the majority of these touchings as discriminatory because they did not subject Ms. Eich to “disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring). Again, my conclusion that Ms. Eich presented the minimum of requisite evidence to have her claim heard by a jury is not dependent on these questionably relevant touchings.
Despite the foregoing concerns, when viewed in the light most favorable to the verdict, I believe the relevant evidence is susceptible to a reasonable interpretation supporting the verdict. Therefore, the jury’s verdict finding that Ms. Eich suffered discrimination because of sex should stand.
II.
As already stated, I join with the majority in reversing the district court’s judgment as a matter of law; however, I must dissent from the majority’s finding of abuse of discretion in the district court’s alternative judgment.
“[T]he standard we will apply in determining whether there was an abuse of discretion in ordering the remittitur- is whether the remittitur was ordered for an amount less than the jury could reasonably find.” Slatton v. Martin K. Eby Construction Co., 506 F.2d 505, 508-09 (8th Cir. 1974); See also Ouachita Nat. Bank v. Tosco Corp., 716 F.2d 485, 488 (8th Cir. 1983). Here, the district court-following its determination on the issue of discrimination-stated its intent to require remitti-tur or a new trial for CMSU should this court reverse its finding that Ms. Eich failed to state a prima facie case under Title VII. The district court reduced the jury award for non-eeonomic damages from $200,000 to $10,000, finding that the evidence failed to support the higher sum.
1 agree with the district court. Ms. Eich offered no expert testimony on non-economic damages, nor did she provide testimony of physical manifestations of psychological harm. Other than Ms. Eich’s own testimony, there was no other evidence offered supporting these damages. Ms. Eich’s principal complaints per *715 tained to the difficulties attending her employment status following her resignation, not the conduct of Gillespie and Drake. While medical or other expert evidence is not required to prove emotional distress in Title VII cases, proof more substantial than that offered by Ms. Eich is required by our precedents. Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349 (8th Cir.1997); See also Forshee v. Waterloo Industries, Inc., 178 F.3d 527 (8th Cir.1999).
III.
For the foregoing reasons, I concur in the majority’s decision to reverse the grant of judgment as a matter of law and dissent from its reversal of the district court’s remittitur order.

. I share with my colleagues the view that all people should be treated with respect and decency, in and out of the workplace. My disagreement with the majority should in no way be viewed as condoning the lamentable behavior exhibited by some of Central Missouri State University's employees.