**REPUBLICAN PARTY OF MINNESOTA, an association; Indian Asian American Republicans of Minnesota, an association; Republican Seniors, an association; Young Republican**

League of Minnesota, a Minnesota nonprofit corporation; Minnesota College Republicans, an association, Plaintiffs—Appellants,

Gregory F. Wersal, individually, Plaintiff,

Cheryl L. Wersal, individually; Mark E. Wersal, individually; Corwin C. Hulbert, individually, Plaintiffs—Appellants,

Campaign for Justice, an association, Plaintiff,

Minnesota African American Republic Council, an association, Plaintiff—Appellant,

Muslim Republicans, an association; Michael Maxim, individually; Kevin J. Kolosky, individually, Plaintiffs,

v.

Suzanne WHITE, in her capacity as Chairperson of the Minnesota Board on Judicial Standards, or her successor; Kenneth L. Jorgensen, in his capacity as Director of the Minnesota Office of Lawyers Professional Responsibility, or his successor; Charles E. Lundberg, in his capacity as Chair of the Minnesota Lawyers Professional Responsibility Board, or his successor, Defendants—Appellees,

Minnesota Civil Liberties Union, Amicus on Behalf of Appellant,

The Minnesota State Bar Association; The Conference of Chief Justices; The Missouri Bar; The Brennan Center for Justice at NYU School of Law; Campaigns for People; Citizen Action/Illinois; Conference of Ad Hoc

Committee of Former Justices and Friends; State of Arkansas; Arkansas Supreme Court, Amici on Behalf of Appellees.

Republican Party of Minnesota, an association; Indian Asian American Republicans of Minnesota, an association; Republican Seniors, an association; Young Republican League of Minnesota, a Minnesota nonprofit corporation; Minnesota College Republicans, an association; Minnesota African American Republic Council, an association; Cheryl L. Wersal, individually; Mark E. Wersal, individually; Corwin C. Hulbert, individually; Gregory F. Wersal, individually; Campaign for Justice, an association; Muslim Republicans, an association, Plaintiffs,

Michael Maxim, individually, Plaintiff—Appellant,

Kevin J. Kolosky, individually, Plaintiff,

v.

Suzanne White, in her capacity as Chairperson of the Minnesota Board on Judicial Standards, or her successor; Kenneth L. Jorgensen, in his capacity as Director of the Minnesota Office of Lawyers Professional Responsibility, or his successor; Charles E. Lundberg, in his capacity as Chair of the Minnesota Lawyers Professional Responsibility Board, or his successor, Defendants—Appellees,

The Minnesota State Bar Association, Amicus on Behalf of Appellee,

The Conference of Chief Justices; The Missouri Bar; The Brennan Center for Justice at NYU School of Law; Campaigns for People; Citizen Action/Illinois; Conference of Ad Hoc

914

Committee of Former Justices and Friends; State of Arkansas; Arkansas Supreme Court, Amici on Behalf of Appellees.

Republican Party of Minnesota, an association; Indian Asian American Republicans of Minnesota, an association; Republican Seniors, an association; Young Republican League of Minnesota, a Minnesota nonprofit corporation; Minnesota College Republicans, an association, Plaintiffs,

Gregory F. Wersal, individually, Plaintiff—Appellant,

Cheryl L. Wersal, individually; Mark E. Wersal, individually; Corwin C. Hulbert, individually, Plaintiffs,

Campaign for Justice, an association, Plaintiff—Appellant,

Minnesota African American Republic Council, an association; Muslim Republicans, an association; Michael Maxim, individually, Plaintiffs,

Kevin J. Kolosky, individually, Plaintiff—Appellant,

v.

Suzanne White, in her capacity as Chairperson of the Minnesota Board on Judicial Standards, or her successor; Kenneth L. Jorgensen, in his capacity as Director of the Minnesota Office of Lawyers Professional Responsibility, or his successor; Charles E. Lundberg, in his capacity as Chair of the Minnesota Lawyers Professional Responsibility Board, or his successor, Defendants—Appellees,

The Minnesota State Bar Association, Amicus on Behalf of Appellees,

The Conference of Chief Justices; The Missouri Bar; The Brennan Center for Justice at NYU School of Law; Campaigns for People; Citizen Action/Illinois; Conference of Ad Hoc Committee of Former Justices and Friends; State of Arkansas; Arkansas Supreme Court, Amici on Behalf of Appellees.

No. 99–4021, 99–4025, 99–4029.

United States Court of Appeals, Eighth Circuit.

June 20, 2006.

James Bopp, Jr., Eric C. Bohnet, Thomas J. Marzen, Bopp & Coleson, Terre Haute, IN, Erick G. Kaardal, Mohrman & Kaardal, P.A., Minneapolis, MN, Tony P. Trimble, Matthew Wayne Haapoja, Trimble & Associates, Minnetonka, MN, for Plaintiffs-Appellants.

William F. Mohrman, Mohrman & Kaardal, P.A., Minneapolis, MN, for Plaintiff.

Mark Bernard Levinger, Thomas Campion Vasaly, Attorney General's Office, St. Paul, MN, for Defendants-Appellees.

Stephen B. Young, St. Paul, MN, for Amicus on Behalf of Minnesota Civil Liberties Union.

George W. Soule, Bowman & Brooke, Minneapolis, MN, for Amici on Behalf of Minnesota State Bar Association.

Michael Thomas Andrews, Vogel Law Firm, Bismarck, ND, Roy Schotland, Georgetown University Georgetown University Law Center, Washington, DC, Brady C. Williamson, Lafollette & Godfrey, Madison, WI, for Amici on Behalf of the Conference of Chief Justices.

Joseph C. Blanton, Jr., Blanton & Rice, Sikeston, MO, for Amici on Behalf of the Missouri Bar.

Deborah Goldberg, Brennan Center for Justice, New York, NY, for Amici on behalf of the Brennan Center for Justice at NYU School of Law.

Dennis Ronald Hansen, Attorney General's Office, Little Rock, AR, for Amici on Behalf of State of Arkansas.

Before WOLLMAN,[1] JOHN R. GIBSON, and BEAM, and Circuit Judges.

## ORDER

Pending before the court are Appellant Republican Party of Minnesota (RPM)'s Bill of Costs, Appellant Gregory Wersal (Wersal)'s Bill of Costs, RPM's Motion for Attorney Fees and Expenses, Wersal's Motion for Attorney Fees, Appellees' Motion for Remand of Appellants' Applications for Costs and Attorney Fees, Wersal's Supplemental Motion for Attorney Fees and Expenses, and RPM's Supplemental Motion for Attorney Fees and Expenses. After careful review of the voluminous record, we find as follows:

**COSTS:**

■ 1. Appellees object to some of the costs RPM seeks to tax in its Bill of Costs.

a. On January 7, 2000, RPM filed eleven copies of an appendix at a cost of $3551.90. Appellees point out that Eighth Circuit Local Rule (Local Rule) 39A allows only for taxing costs of three copies, plus one for each party, unless otherwise directed by the

1. The Honorable Theodore McMillian died on January 18, 2006. This memorandum and order is filed by the remaining members of the panel and Judge Wollman, who was designated, pursuant to 8th Circuit Rule 47E, to replace Judge McMillian on the panel.

court. It appears the court did not direct otherwise. Appellees argue that RPM gave them two copies of the appendix. We agree with Appellees that RPM may tax costs for five copies, for a total of $1614.50.

b. On June 1, 2004, RPM filed twenty-nine copies of additional briefing at a cost of $181.25. We agree with Appellees that the court requested twenty-five copies, and so pursuant to Local Rule 39A, RPM may tax costs of $156.25.

c. On September 13, 2004, RPM filed thirty-nine copies of its brief in reply to amici, at a cost of $214.50. We agree with Appellees that extraneous reply briefs were provided, and thus RPM may tax costs of $203.50.

d. Pursuant to Federal Rules of Appellate Procedure (FRAP) 39(a) and Local Rule 39A, under RPM's Bill of Costs, we tax costs of $2488.50 against Appellees. This amount includes other costs not objected to by Appellees.

2. Appellees object to some of the costs submitted by Wersal:

a. On June 1, 2004, Wersal filed thirty-one copies of a supplemental brief at a cost of $254.50. We agree with Appellees that the court requested twenty-five copies, and so pursuant to Local Rule 39A, Wersal may tax costs of $212.50.

b. On September 14, 2004, Wersal filed thirty-nine copies of a brief in reply to amici at a cost of $214.50. We agree with Appellees that extraneous reply briefs were provided, and thus Wersal may tax costs of $118.50.

c. Pursuant to FRAP 39(a) and Local Rule 39A, under Wersal's Bill of Costs, we tax costs of $1167.80 against Appellees. This amount includes other costs not objected to by Appellees.

## ATTORNEY FEES AND EXPENSES:

1. Appellees assert that the matter of fees and expenses should be remanded to the district court. We reject that assertion and deny Appellee's Motion for Remand of Appellants' Applications for Costs and Attorneys Fees.

2. Two law firms; Bopp, Coleson & Bostrom and Trimble & Associates, Ltd.; and one professor; Ronald D. Rotunda; represented RPM during the course of this litigation. RPM's total request for attorney fees and expenses is $957,178.05.

3. One law firm; Mohrman & Kaardal, P.A.; represented Wersal during the course of this litigation. Wersal's total request for attorney fees and expenses is $661,951.01.

4. Taken together, RPM and Wersal request $1,619,129.06 in attorney fees and expenses.

5. Appellees argue that RPM is not a prevailing party, and thus is not entitled to fees and expenses under 42 U.S.C. § 1988. Appellees assert that they did not have jurisdiction over RPM's actions because Canon 5 regulated only the actions of attorneys and judges, and not political parties. Thus, Appellees assert that there was no legal relationship between them and RPM, and thus the resolution of the case did not in any way alter the legal relationship between the parties. They cite *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) for the definition of a prevailing party: "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying

the defendant's behavior in a way that directly benefits the plaintiff." Appellees' argument is unavailing. In this case, a legal relationship existed between RPM and Appellees to the extent that Appellees' enforcement of Canon 5 prevented RPM from associating with particular candidates through their endorsements. Appellees argue that Canon 5 never regulated RPM's right to endorse any candidate they chose, but only regulated candidates' use of that endorsement. This is a hollow "right," however, because if candidates could never accept or use an endorsement from a party, it would do little good for the party to make the endorsement. Thus, a legal relationship did exist between RPM and Appellees, which is the very reason RPM joined the litigation, and why it had standing to pursue the case. RPM prevailed in that it can now freely endorse candidates without risking an ethics violation on the part of its chosen standard-bearers, which would undo any endorsement given by the party.

6. Appellees cite *Peter v. Jax*, 187 F.3d 829 (8th Cir.1999) and *Thorsted v. Munro*, 75 F.3d 454 (9th Cir.1996) to assert that special circumstances exist which support the denial of fees to RPM, including (1) an award was not necessary to ensure access to justice, (2) awarding fees would be an undue burden on Minnesota's state coffers, (3) Appellees acted in good faith in adopting and enforcing Canon 5, not intending to trample any constitutional rights, (4) Appellees did not cause the litigation, and (5) Appellees never acted to enforce Canon 5 against RPM. But none of these contentions present convincing arguments sufficient to deny RPM's attorneys remuneration for a case that has spanned over eight years and resulted in considerable change in Minnesota judicial election law.

In *Jax*, after finding that appellants were not prevailing parties, this court stated that even if they were, they would not be entitled to attorney fees due to special circumstances. In that case, appellants had sued a school district and the State of Minnesota over a state rule that forbade providing paraprofessional services to students at religious schools. The state argued it could not provide services at the religious school because *Aguilar v. Felton*, 473 U.S. 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985) barred such activity. Appellants relied on *Zobrest v. Catalina Foothills School District*, 509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993), which called *Aguilar* into question, but did not expressly overrule it. During the pendency of *Jax*, the Supreme Court decided *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), in which the Court expressly overruled *Aguilar*. Thereafter, the state did not enforce its rule. This court determined that the state and school district had been bound to follow *Aguilar* until it was expressly overruled, and thus this special circumstance counseled against awarding fees in *Jax*. Additionally, this court noted that appellants' counsel believed that the Court would decide *Agostini* in their favor, being dispositive in their case in *Jax*, but continued to litigate anyway.

No such special circumstances are apparent in the instant case. Appellees were not bound by any Supreme Court precedent to enforce Canon 5, and no dispositive cases were being decided during the pendency of this case. Indeed, based solely upon the

amount of amici opposing them, RPM and Wersal apparently found themselves in a minority position regarding the constitutionality of judicial canons regulating political activity. We do not find that any special circumstances militate against awarding attorney fees to either RPM or Wersal.

7. Appellees assert that much of the work on RPM's and Wersal's case was excessive and duplicative of work done by other firms working on the case, and thus suggest a thirty percent reduction in both parties' requests. Specifically, Appellees argue that too many attorneys worked on the case, causing, among other things, excessive conferencing. Appellees assert that RPM's and Wersal's interests could have been served equally well by one law firm, and not the combination of firms that RPM and Wersal had together. But, as RPM points out, it was important for it and Wersal to be represented by different firms, given the importance of avoiding an impression that the party actually had endorsed Wersal, and that he had accepted that endorsement. Their interests were not entirely congruent, either. We find Appellees' argument on this point to be without merit.

8. Appellees argue that the Bopp firm's practice of billing in quarter-hour increments makes their charges unreasonable. They make the point that even short phone calls lasting only five minutes or less would automatically be billed for fifteen minutes, and they point to a number of phone calls that are billed separately, potentially inflating the total bill. We agree that quarter-hour increment billing is less reliable than tenth-hour billing and risks bill infla-

tion. We note the cases Appellees cite which have reduced or denied fee requests because firms did not bill in tenth-hour increments. *See, e.g. Blackman v. Dist. of Columbia,* 59 F.Supp.2d 37, 44 n. 5 (D.D.C. 1999) ("In the future, the Court will not award fees where plaintiffs' counsel has not calculated his time in tenth-hour increments.").

Instead of denying fees because the Bopp firm did not bill in tenth-hour increments, we have reviewed the record for instances where one-quarter of an hour was billed for a "conference," be it in-person or by telephone. We found over 500 such examples. Without a more specific accounting, we are left to believe that these are the most likely examples where overbilling may have occurred. As a correction, we have converted each of those charges into tenth-hour charges. As a result, RPM's request for fees will be reduced by a total of $26,033.25.

9. Appellees argue that the rates at which Appellants' attorneys charged for their services exceed reasonable standards as defined by the Minneapolis–St. Paul market. In one example, the Appellees argue that the size of a law firm is a factor in determining the appropriate market rate. They point to a study-the 2001 "Billing Rate Survey–Minnesota Law Firms"-of firms in Minnesota similar in size to the Bopp firm, which categorizes firms by size in the state and lists their regular rates. The Bopp firm has nine lawyers. Firms of comparable size in Minnesota, according to the study, charge $225 per hour, while Mr. Bopp seeks $425 per hour and Mr. Trimble seeks $400 per hour. But Appellees do not account for the fact

that though the Bopp firm is small, it appears to be so because it is an appellate firm specializing in First Amendment cases. In this case, the expertise of the attorneys in the Bopp firm seems to justify the rates without regard to the size of the firm overall, and we find that expertise to be the controlling factor. The rates charged are reasonable.

10. Wersal contends he is entitled to a 1.5 multiplier on attorney fees because of this case's extreme unpopularity and the exceptional results he achieved. As evidence of the alleged unpopularity of the case, he cites purported negative treatment by others in the Minnesota bar for bringing the case, including (1) his difficulty in finding representation in the case, having been turned down by even the Minnesota Civil Liberties Union, (2) ethical complaints filed against Wersal related to his challenge of Canon 5, (3) public assertions by fellow attorneys that Wersal was behaving unethically in his campaigns for the Minnesota Supreme Court, (4) being "dressed down" about Wersal's challenge of Canon 5 by a particular state judge during an unrelated hearing for one of Wersal's clients, and having the judge tell him that in the future he should have his law partner bring his cases to the judge's court, (5) an angry encounter with a state judge outside a state bar convention, (6) opposition from the sitting Chief Justice of the Minnesota Supreme Court to Wersal's challenge of Canon 5, and (7) comments in the *Minnesota Lawyer* by the former head of the Minnesota Office of Lawyers Professional Responsibility that implied Wersal would be even more

unpopular among his colleagues once the total bill for the case was assessed, and attorneys would be asked statewide to help pay it. We agree with Appellees that these examples do not merit application of a multiplier. As this court stated in *Forshee v. Waterloo Industries, Inc.,* 178 F.3d 527 (8th Cir.1999):

An upward adjustment to an attorney's lodestar hourly rate is permissible in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts. Because the lodestar amount may already compensate the applicant for exceptionally good service and results, however, the fee applicant must do more than establish outstanding service and results. The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended.

*Id.* at 532 (internal quotations and citations omitted). We think the lodestar amount in this case amply recompenses Wersal's attorneys' efforts in this case. We note that, if proven true, it is particularly disappointing that a state judge would accost Wersal in open court in front of his client and professional colleagues in a totally unrelated case, for exercising his right to seek redress of a colorable, and ultimately valid, constitutional claim. But Wersal is an attorney, no doubt accustomed to the sometimes rough-and-tumble manner of the legal profession. While applying a multiplier might be one way to account for incredible behavior on the part of a judge entrusted to be impartial, if

such can be established, we are confident there are more appropriate tools to rectify the situation. We also do not believe Wersal's other grievances merit application of the multiplier in this case, and therefore decline to do so.

11. We conclude that the parties representing appellants RPM and Wersal are entitled to the following fees and expenses, and we dispose of Appellants' motions and supplemental motions for the same by awarding the fees and expenses as follows, in addition to the costs taxed above against Appellees:

Bopp, Coleson & Bostrom: $867,146.05

Trimble & Associates, Ltd.: $46,148.75

Ronald D. Rotunda: $17,850.00

Mohrman & Kaardal, P.A.: $443,783.51.