# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3466

_____

Catherine L. Taylor,

*Plaintiff - Appellant,*

v.

Tenant Tracker, Inc., also known as Result Matrix, Inc.,

*Defendant - Appellee.*

_____

No. 11-3648

_____

Catherine L. Taylor,

*Plaintiff - Appellee,*

v.

Tenant Tracker, Inc., also known as Result Matrix, Inc.,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 20, 2012
Filed: March 28, 2013
_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Catherine Taylor ("Taylor") sued Tenant Tracker, Inc. ("Tenant Tracker"), alleging that Tenant Tracker failed to adopt reasonable procedures to ensure maximum possible accuracy of its credit reporting, in violation of the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681 *et seq*. The district court[1] granted summary judgment in favor of Tenant Tracker, and we affirm.

I.

Because we are reviewing a grant of summary judgment, we view the facts in the light most favorable to Taylor. Taylor and her husband, Max Taylor, applied for federal housing assistance with the Benton Public Housing Authority ("the Housing Authority") in September 2008. At the time of their application, the Taylors met the initial income qualifications for the Section 8 Existing Housing Voucher Program established under the Housing and Urban-Rural Recovery Act of 1983. 42 U.S.C. § 1437f(o). On April 7, 2010, Taylor and her husband met with Wanda Taylor ("Wanda")—an employee of the Housing Authority and of no relation to Taylor—to complete a background check. Public housing agencies must screen applicants by performing "criminal history background checks necessary to determine whether any household member" has a history that requires the denial of assistance under federal

_____

[1] The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

-2-

regulations. 24 C.F.R. § 982.553(a)(2)(I); *see generally* 24 C.F.R. § 982.552-554. Taylor signed a release and provided her name, address, phone number, date of birth, social security number, and driver's license number. The release authorized the Housing Authority to perform the federally-mandated screening for drug-related or violent criminal history and for sex-offender registration.

The Housing Authority has subscribed to Tenant Tracker's public record reporting service since 2003, and used Tenant Tracker's service to conduct its criminal background check on Taylor. Tenant Tracker generated a confidential consumer report about Taylor at 10:42 a.m. on April 7, 2010. Wanda reviewed the report in the presence of the Taylors and made handwritten notes on the report during the meeting. The Applicant Identification section of the report listed Taylor's name, her date of birth, her social security number, and her driver's license number. The Public and Criminal Identification section included the following language: "WARNING: Any service NOT using fingerprint analysis has limited effectiveness and is subject to the uniqueness and truthfulness of the applicant's identification. Subscriber shall use all additional identifying information to confirm accuracy."

The Public and Criminal Identification section contained five entries. The first two entries listed an offender named "Chantel Taylor" who was born on the same date as Taylor. These entries indicated that "Chantel Taylor" was convicted in Florida state court of two counts of felony aggravated child abuse in 1990. Tenant Tracker explained that it included these entries in Taylor's report because its records search identified "Chantel Taylor" as a possible alias for "Catherine Taylor."

In her deposition, Wanda stated that she immediately noticed the first name "Chantel" and doubted whether the first two entries were attributable to Taylor. Wanda circled the name "Chantel" and crossed out these first two entries. The third through fifth criminal identification entries listed an offender named "Catherine Taylor" who was born on the same date as Taylor. These entries stated that

"Catherine Taylor" was convicted in Illinois state court of theft, forgery, and possession of a controlled substance. The Notes subsection of these entries indicated that the offender "Catherine Taylor" has a tattoo of the name "Troy" on her left ankle. Wanda said that once she looked at Taylor's ankle and confirmed that Taylor did not have a tattoo, she "didn't even look at the other information" listed under the "Catherine Taylor" entries on the report. Wanda circled the tattoo notation in these three entries and wrote "no tattoo" beside each entry.

Wanda testified that Taylor "started crying and [was] very upset" about the criminal history entries on the report. Taylor told Wanda "that this had happened to her before" because of her relatively common name. In fact, Taylor previously had been confused with the thrice-convicted "Catherine Taylor" from Illinois and twice sued other record reporting entities in federal court, alleging violations of the FCRA.

Wanda took the report to her supervisor, who observed that Taylor's height, weight, eye color, and hair color distinguished her from the physical descriptions of the "Chantel Taylor" and the "Catherine Taylor" listed in the report. The supervisor agreed that the criminal history listed in the report did not relate to Taylor. The Housing Authority resolved the issues surrounding the report entries within approximately five to ten minutes, and approved the Taylors' application for Section 8 benefits that same day.

The Housing Authority sent to Tenant Tracker the additional identifying information that Wanda had obtained during the meeting. Tenant Tracker included this additional information about Taylor in a new records search and generated a report that listed no criminal offense records. Tenant Tracker sent this second report to the Housing Authority at 3:02 p.m. on April 8, 2010, approximately 28 hours after the initial background check. The Taylors ultimately did not receive a Section 8 housing voucher from the Housing Authority because Taylor obtained employment, and thus became ineligible.

-4-

Taylor sued in the district court, alleging among other things that Tenant Tracker violated the FCRA. 15 U.S.C. § 1681e(b). She alleged that Tenant Tracker "failed to adopt and follow 'reasonable procedures' to assure the maximum possible accuracy of [Taylor's] consumer credit and other personal information, as required by the Fair Credit Reporting Act." *See* 15 U.S.C. § 1681e(b). Taylor claimed that Tenant Tracker's "publishing of such false and inaccurate information . . . caused [her] severe humiliation, emotional distress and mental anguish." The district court granted summary judgment in favor of Tenant Tracker, concluding that "the law of this circuit" is set forth in *Wilson v. Rental Research Services, Inc.*, Civ. No. 3-96-820 (D. Minn. Nov. 10, 1997), and that Taylor's claims failed because she presented no evidence to show that Tenant Tracker's reports were "technically inaccurate" or that Tenant Tracker acted negligently in preparing the report.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Taylor, the nonmoving party. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Taylor claims that Tenant Tracker violated the FCRA by including entries in her credit report that did not accurately reflect her own background. We need not decide whether Tenant Tracker failed to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Instead, we agree with Tenant Tracker that Taylor presented insufficient evidence to show that she suffered "actual

-5-

damages" from any violation.  We therefore affirm the district court's judgment on this alternative ground.[2]

Under the FCRA, Taylor may recover for any "actual damages" that she sustained as a result of Tenant Tracker's negligent noncompliance with the requirements of the FCRA.  15 U.S.C. § 1681*o*(a)(1).  Mental pain and anxiety can constitute actual damages, *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-35 (8th Cir. 1976), but emotional distress damages must be supported by competent evidence of "genuine injury," which "may be evidenced by one's conduct and observed by others." *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978).  The Supreme Court in *Carey* held that a plaintiff must show this sort of "genuine injury" to establish an "actual injury" that is compensable under 42 U.S.C. § 1983.  *Id.* at 264. The Court's reasoning appeared to extend beyond § 1983, *see id.* at 264-65, and this court and others have applied the requirement of "genuine injury" to claims based on emotional harm and arising under other federal statutes.  *See, e.g.*, *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 865 (8th Cir. 2010) (Title VII of the Civil Rights Act of 1964); *EEOC v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 797 (8th Cir. 2007) (Americans with Disabilities Act); *Patterson v. PHP Healthcare Corp.*, 90 F.3d 927, 938 n.11 (5th Cir. 1996) (Title VII); *Johnson v. Dep't of Treasury, IRS*, 700 F.2d 971, 977 & n.11 (5th Cir. 1983) (Privacy Act), *abrogated on other grounds by Doe v. Chao*, 540 U.S. 614, 618, 627 n.12 (2004).  We therefore agree with other circuits that a consumer must present competent evidence of actual injury to state a

[2]We do not agree with the district court that the "technical accuracy" standard endorsed in *Wilson v. Rental Research Services, Inc.*, Civ. No. 3-96-820 (D. Minn. Nov. 10, 1997), states the law of this circuit.  On appeal, a divided panel reversed the district court, *Wilson v. Rental Research Servs., Inc.*, 165 F.3d 642 (8th Cir. 1999), that opinion was vacated, 191 F.3d 911, and the *en banc* court ultimately affirmed the judgment of the district court by an equally divided vote.  206 F.3d 810.  But an affirmance by an equally divided court is not binding precedent.  *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 73 n.8 (1977); *United States v. Spector*, 793 F.2d 932, 936 (8th Cir. 1986).

claim under the FCRA.  *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 833 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56 & n.8 (2007); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473-74 (2d Cir. 1995); *Stevenson v. TRW Inc.*, 987 F.2d 288, 296-97 (5th Cir. 1993).

In *Millstone*, we affirmed an award of emotional distress damages under the FCRA where the plaintiff suffered "loss of sleep, nervousness, frustration and mental anguish" as a result of a "grossly inaccurate" consumer report.  *Millstone*, 528 F.2d at 834.  The consumer report at issue, which this court described as "rife with innuendo, misstatement, and slander," claimed that the plaintiff and his wife "were strongly suspected to be drug users by all neighbors" and that they demonstrated an "utter lack of reasoning and judgment."  *Id.* at 834 & n.5.  We concluded that the evidence of emotional distress was sufficient to justify an award of punitive damages for mental anguish.  *Id.* at 834-35.  Similar results from other circuits illustrate the sort of evidence that is sufficient to demonstrate a genuine injury and actual damages under the FCRA.  *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010) (sufficient evidence of genuine injury where plaintiff suffered "severe anxiety, fear, distress, and embarrassment," as well as sleeplessness that required medication, and a relative testified that the plaintiff "cried often and lost weight due to the stress regarding her credit report over the two-year ordeal"); *Stevenson*, 987 F.2d at 297 (plaintiff presented sufficient evidence of genuine injury where he was denied credit three times during a credit reporting agency's five-month reinvestigation into his disputed credit report, was required to explain his credit issues to a business associate and to the presidents of two different banks, and experienced "considerable embarrassment" as a result).

In *Forshee v. Waterloo Industries, Inc.*, 178 F.3d 527 (8th Cir. 1999), however, we held that the plaintiff presented insufficient evidence of emotional injury in a Title VII case when, after she was terminated, the plaintiff said she "went home and sat and cried about the rest of the day."  *Id.* at 531.  Although injury may be established solely

by a plaintiff's own testimony, we concluded that the testimony presented "did not identify and describe the kind of severe emotional distress that warranted" damages. *Id*. The plaintiff in *Forshee* "suffered no physical injury, she was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress." *Id*. Other circuits have reached the same conclusion on similar evidence in cases arising under the FCRA. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001) (plaintiff's testimony that seeing his inaccurate credit report made him "[v]ery upset" and "angry" held insufficient to establish genuine injury); *Wantz*, 386 F.3d at 834 (testimony that the plaintiff was "humiliated and embarrassed," and that dealing with credit reporting agencies was "mentally and emotionally distressful," held insufficient to establish actual damages); *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005) (plaintiff failed to demonstrate actual damages where she offered conclusory statements of her emotional distress and failed to describe her injury in any reasonable detail).

On this record, we conclude that Taylor did not present competent evidence that she suffered actual damages under the FCRA. Taylor acknowledged in her deposition that the only alleged harm she suffered was emotional injury. The Housing Authority took no adverse action as a result of the report. The matter was resolved within five to ten minutes, and the Housing Authority approved the Taylors' application for assistance on the same day that Wanda reviewed the report.

The evidence of alleged emotional injury consists of Taylor's testimony that she "was very upset" and "extremely upset and embarrassed" by the entries in the report concerning other persons named Taylor, and Wanda's testimony that Taylor "had started crying and [was] very upset" during their brief meeting. In our view, this evidence is insufficient to satisfy the requirement of genuine injury and actual damages. Like the plaintiff in *Forshee*, Taylor suffered no physical injury and was not medically treated for any psychological or emotional injury. Taylor offered no

reasonable detail about the nature and extent of her alleged emotional distress. Although Wanda witnessed Taylor crying during the meeting, corroboration of a brief episode of frustration and unhappiness does not establish the sort of concrete emotional distress that is required to constitute a genuine injury and actual damages. We therefore conclude that the district court properly dismissed Taylor's claim under the FCRA, albeit for reasons different than those cited in the court's order granting summary judgment.

\* \* \*

The judgment of the district court is affirmed.

_____